## Mueller. v. Nationwide Mutual Insurance Co.

24

C.P. of Allegheny County, no. GD95-4466 and GD94-18921.

*David M. Landay,* for plaintiff Mueller.
*Merle Kramer Mermelstein,* for plaintiff Hagey.
*Donald H. Smith,* for defendant Nationwide.
*Arthur J. Leonard,* for defendant Erie.

WETTICK, *J.,* May 22, 1996—*Mueller v. Nationwide Mutual Insurance Company* is a lawsuit against the insurance company which provided liability insurance for plaintiff's automobile. Count I of plaintiff's complaint is a breach of contract action in which plaintiff

seeks first party benefits. Count II is a bad faith claim under 42 Pa.C.S. §8371 based on allegations concerning the manner in which Nationwide handled plaintiff's claim and its refusal to make payments. In its answer, Nationwide alleges that the claims for first party benefits that are the subject of this lawsuit were properly denied because of plaintiff's failure to submit reasonable proof of the fact and amount of the claims. Nationwide also specifically denies that it acted in bad faith.

*Hagey v. Erie Insurance Exchange* is a lawsuit against the insurance company which provided liability insurance and underinsured motorist coverage ($100,000) for plaintiff's automobile. Plaintiff was seriously injured when her vehicle was struck by a vehicle operated by a driver insured by Wildwood Insurance. Wildwood paid its policy limits ($50,000). Plaintiff requested Erie to pay the policy limits for underinsured motorists benefits ($100,000). Erie offered only $20,000. At a common-law arbitration hearing, plaintiff was awarded $140,000 against Erie (which award was molded to $100,000). Plaintiff then instituted this bad faith action pursuant to 42 Pa.C.S. §8371 in which it seeks interest, costs, counsel fees, and punitive damages for failure to pay the policy limits. In its answer, Erie denies that it acted in bad faith; it alleges that its evaluation of plaintiff's underinsured motorist claim was fair and reasonable, that its offer of settlement was fair and reasonable, and that it fulfilled its fiduciary obligations to plaintiff.

In *Mueller v. Nationwide Mutual Insurance Company,* Mueller seeks a court order compelling Nationwide to produce its entire claims file up to the date that Mueller instituted this lawsuit. Nationwide has withheld communications with its counsel and trial preparation material described in the final sentence of Pa.R.C.P. 4003.3

("[w]ith respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics").

In *Hagey v. Erie Insurance Exchange,* plaintiff seeks Erie's entire claims file up to the date on which this lawsuit was filed. Initially, Erie withheld any communications with its counsel and any trial preparation material described in the final sentence of Rule 4003.3. Thereafter, Erie made some of these documents available; however, plaintiff's brief indicates that the issues are not resolved.

## I.

I initially consider the insurance companies' claims that they need not produce any portions of their files containing mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense, or respecting strategy or tactics. Obviously, this information is relevant to the bad faith claims because the actual rationale and motives of the decision-makers are important factors in the resolution of these claims.

The work product protection is not a privilege; it is a creature of the rules of discovery. Consequently, the limits of the work product protection are determined by reviewing the language of the applicable rule of discovery, the purposes for the rule, and the explanatory note to the rule. See *Maleski v. Corporate Life Insurance Co.,* 163 Pa. Commw. 36, 45, 641 A.2d 1, 5 (1994), where the court said that the Pennsylvania courts have never recognized a common-law work product doctrine; courts have utilized the doctrine only where it is contained within a specific rule or statute governing the proceeding.

In *Little v. Allstate Insurance Co.,* 16 D.&C.3d 110, 128 P.L.J. 428 (1980), I considered an almost identical issue. The insured sought no-fault benefits and attorneys' fees. The claim for attorneys' fees was based on a statutory provision which allowed the court to award counsel fees where the insured denied the claim "without reasonable foundation." In preparing for its claim for counsel fees, the plaintiff sought portions of documents containing the mental impressions, conclusions, and opinions of the insurance company's representatives respecting the value and merit of the claim for no-fault benefits. The insurance company argued that the information was protected under the final sentence of Rule 4003.3.

For three reasons in *Little v. Allstate Insurance Co.,* I concluded that Rule 4003.3's protections apply only to the litigation of the claims for which the impressions, conclusions, and opinions were made. First, this construction of Rule 4003.3 is consistent with the manner in which Rule 4003.3 has balanced the interests of a party in protecting its work product against the interests of a party in discovering relevant information—it is the policy of Rule 4003.3 to favor discovery of relevant information because the rule permits discovery of evidence prepared or obtained for litigation. Also see *Weeks v. The Travellers Companies,* 7 D.&C.4th 121 (York 1990); *Nedrow v. Pennsylvania National Mutual Casualty Insurance Co.,* 31 D.&C.3d 456 (Somerset 1981), and the cases cited therein. Second, the case law construing the previous discovery rule, which gave far more protection to a party's work product, protected the work product only for the litigation for which the matters were prepared or secured. Third, the Explanatory Note—1978 to Rule 4003.3 supports this result.

The opinion of Honorable Bernard J. Avellino in *Tate v. Philadelphia Savings Fund Society,* 1 D.&C.4th 131 (Philadelphia 1987), contains the best analysis of Rule 4003.3 that I have seen. Rule 4003.3 is a "small shield and it offers a representative, who had firsthand knowledge of relevant matters, very little protection from discovery arrows." *Id.* at 137. As to non-attorney representatives, its purpose is to protect only comments that are non-evidentiary communications. Where the statements of a non-attorney representative may be admissible evidence, they are not protected by Rule 4003.3. What is protected are statements respecting the value or merit of a claim or defense or a strategy or tactic that have virtually no evidentiary value.

"At best, they are inexpert speculation or conjecture, and, at worst, they are just plain gossip. They may be of interest to an adversary, but they are not probative o[f] any of the issues joined for trial, except on those rare occasions wh[ere] the conduct of the representative is, itself, the subject of the litigation. In such cases, the comments are discoverable. See, for example, *Little v. Allstate,* 16 D.&C.3d 110 (1980). Meanwhile, in the ordinary case, keeping such [communications] confidential encourages them, and that is important. Gossipy chitchat, especially between a ranking representative and counsel, often leads to an accurate assessment of the case by one or the other, or both." *Id.* at 139. (citation omitted)

I recognize that in *Mueller v. Nationwide Mutual Insurance Company,* I am allowing plaintiff to obtain statements of Nationwide's non-attorney representatives regarding the merit and value of plaintiff's first party benefit claim, and of strategy and tactics that should be pursued, before the first party benefit claim is tried. Ordinarily this information will not place the insurance

company at a disadvantage in trying the first party benefit claim (provided that there is a bifurcated trial in which the same jury in the first phase of the trial considers only the first party benefit claim and thereafter in a second phase of the trial considers the bad faith claim) because, as Judge Avellino recognized, these statements cannot be introduced into evidence at the trial of the first party benefit case and are simply one person's assessment of the case.[1]

In *Yohe v. Nationwide Mutual Life Insurance Co.,* 7 D.&C.4th 300 (York 1990), the insurance company argued that the plaintiffs should not obtain the mental impressions of its representatives concerning the value or merit of the first party benefit claim whenever the plaintiffs were seeking to try the first party benefit and bad faith claims before the same jury. Honorable Emanuel A. Cassimatis rejected the defendant's claim that it was entitled to have these matters severed as a matter of right because the claim based on the insurance policy and the bad faith claim are so closely related that judicial economy dictates that the two be heard in the same setting. The court's opinion does not address the issue of whether or not both issues will be tried together because the parties' arguments did not raise this issue.

The final argument raised by plaintiff Hagey concerns trial preparation material prepared after the arbitration decision and before Ms. Hagey filed suit against Erie

---

1. A court may decide to try the bad faith claim at a later date after the trial of the first party benefit claim in a particular case if the insurance company can establish that the disclosure in that particular case of statements of its representatives regarding the value or merit of the claim or defense or a strategy or tactic prior to the trial of the first party benefit claim would substantially prejudice its interests.

Insurance Exchange. Ms. Hagey contends that the final sentence of Rule 4003.3 does not apply until she filed suit because these documents could not have been prepared in anticipation of litigation. I reject this contention because Rule 4003.3 protects any mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense. Rule 4003.3 does not refer to information prepared in anticipation of litigation. Instead, the line between what work product is discoverable and what work product is protected is that drawn by Judge Avellino in the *Tate* case. Matters involving "value," "merit," "strategy" or "tactics" are protected unless they have evidentiary value. *Tate, supra* at 141-42. See *Sedat Inc. v. Department of Environmental Resources,* 163 Pa. Commw. 29, 33, 641 A.2d 1243, 1245 (1994), where the court held that the work product protections of Rule 4003.3 apply even though counsel's communication was without reference to any specific anticipated litigation—the rule's protection of an attorney's mental impressions "is unqualified."

## II.

I next consider plaintiffs' requests that I compel the insurance companies to produce communications in which their counsel provided legal advice regarding the underlying claims. Plaintiffs contend that the attorney-client privilege should not apply to communications between counsel and the insurance companies that are relevant to the state of mind of the representatives of the insurance companies whenever state of mind is a central issue in the case. Plaintiffs state that usually there is not another source from which this information can be obtained and it is not fair for a party that claims that it acted in good faith to withhold evidence that may be inconsistent with this position.

The underlying premise of this argument is that the attorney-client privilege is not an absolute privilege. It does not apply where there is a substantial need for information.

There is no Pennsylvania appellate court case law which supports the position that the attorney-client privilege gives way upon a showing of need or that the availability of the privilege depends upon the nature of the claims and defenses. In Pennsylvania, the attorney-client privilege is an absolute privilege; it is not a limited privilege that is inapplicable whenever a court determines that the case cannot be fairly decided if the privilege is invoked.

Under Pennsylvania case law, the requirements that must be met for the attorney-client privilege to apply are set forth in the oft-cited case of *United States v. United Shoe Machinery Corp.,* 89 F. Supp. 357, 358-59 (D. Mass. 1950) (Wyzanski, J.):

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

Whenever these requirements are met, the communication is protected. See *Commonwealth v. Mrozek,* 441 Pa. Super. 425, 428, 657 A.2d 997, 998 (1995);

*Hopewell v. Adebimpe,* 18 D.&C.3d 659, 660-61, 129 P.L.J. 146, 147 (1981), and cases cited therein.

Plaintiffs' next argument is that even assuming that the attorney-client privilege is an absolute privilege, it has been waived by the client. They contend that the insurance companies' answers that they acted in good faith are a waiver of the privilege because they have now made relevant the communications between the insurance companies and their attorneys. However, this is another variation of the argument that the attorney-client privilege should not apply whenever the issue is whether or not an insurance company handled a claim in good faith. An insurance company's defense that it acted in good faith need not be based on communications from counsel; it may be the position of the decision-makers for the insurance company that they were not influenced by any advice that counsel provided.

I recognize that there will be instances in which an insurance company will contend that it was influenced by the advice of counsel. It may, for example, contend that it acted in good faith because it based its decision on advice of counsel. In this instance, the privilege is deemed to have been waived by the client. A party is not permitted to use the attorney-client privilege as a sword and as a shield. See *Minatronics Corp. v. Buchanan Ingersoll P.C.,* 23 D.&C.4th 1, 15-21, 143 P.L.J. 228, 233-36 (1995), and cases cited therein. Consequently, if an insurance company is going to raise as a defense to the bad faith claim that it relied upon advice of counsel, the privilege has been waived as to any communications between the insurance company and its counsel regarding the underlying claims upon which the bad faith claim is based. Thus, in these cases Nationwide and Erie cannot raise the attorney-client

privilege unless they state that they will not be contending that advice of counsel was a factor that influenced the manner in which they handled the insured's claims.

There is some case law in other jurisdictions which supports plaintiffs' position that a party is deemed to have waived the attorney-client privilege whenever its claims or defenses involve its state of mind. These cases have adopted a doctrine that is referred to as an "at issue" waiver. The "at issue" waiver has arisen in two types of cases: The first is a bad faith claim of an insured against the insurance company in which the insurance company claims that it acted in good faith in the manner in which it handled the underlying claim. The second is a claim by an insured against its insurance company seeking liability and indemnity coverage with respect to environmental claims against the insured where the insurance company has denied coverage on the ground that the insured was aware of its hazardous activities and potential claims prior to obtaining insurance. In the first instance, the insured contends that the insurance company waived the attorney-client privilege by claiming that it acted in good faith in the manner in which it handled the underlying claim and in the latter instance the insurance company contends that the privilege has been waived because the insured has made its state of mind an issue in the case.

*Hearn v. Rhay,* 68 F.R.D. 574 (E.D. Wash. 1975), is the initial case that recognized an "at issue" waiver. In that case, a prisoner who was confined to the mental health unit of a prison brought a civil rights action in which he contended that the mental health unit was a euphemism for a punitive isolation tier where prisoners were kept as a punitive measure in filthy cells without

adequate heat, hygienic materials, exercise, or reading materials. The prison officials who were named as defendants raised the defense that they were immune; this defense was based on allegations that they had acted in good faith. Through discovery, the plaintiff sought all legal advice that the defendants had received on the legality of his confinement in the mental health unit. The defendants opposed the discovery request on the ground that the information was protected by the attorney-client privilege. The court held that it was "compelled to recognize a new and narrowly limited exception to the attorney-client privilege, which applies to civil rights suits against state officials under 42 U.S.C. §1983, wherein the defendant asserts the affirmative defense of good faith immunity." *Id.* at 580. The court, citing 8 *Wigmore,* §2285 at 527, stated that "the policy of the privilege is to protect confidential attorney-client relationships only to the extent that the injury the relationship would suffer from disclosure is greater than the benefits to be gained thereby." *Id.* at 582. Under the circumstances of this suit, the court held that the privilege was outweighed by the necessity of disclosure and therefore was inapplicable because:

"In an ordinary case the obstruction is not likely to be great, for attorney-client communications are usually incidental to the lawsuit, notwithstanding their possible relevance, and other means of proof are normally available. In this case, however, the content of defendant's communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defense. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues. To allow assertion of the privilege in this

manner would pervert its essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality. Under these circumstances, the benefit to be gained from disclosure far outweighs the resulting injury to the attorney-client relationship. The privilege should not apply." *Id.*

The *Hearn* opinion developed a three element test to determine if the privilege has been waived. A court should find that the party asserting a privilege has impliedly waived it through the party's own affirmative conduct if (1) the assertion of the privilege was a result of some affirmative act, such as filing suit by the party asserting the privilege; (2) through this affirmative act, the party asserting the privilege put the privileged information at issue by making it relevant to the case; and (3) application of the privilege will deny the opposing party access to information vital to that party's defense. *Id.* at 581.

An "at issue" exception to the attorney-client privilege (although not necessarily utilizing the *Hearn* criteria) has been recognized in other cases. See *Koppers Company Inc. v. Aetna Casualty and Surety Co.,* 847 F. Supp. 360 (W.D. Pa. 1994), *mandamus granted,* 40 F.3d 1240 (3d Cir. 1994); *Chase Manhattan Bank v. Drysdale Securities Corp.,* 587 F. Supp. 57, 58 (S.D.N.Y. 1984); *Byers v. Burleson,* 100 F.R.D. 436 (D.D.C. 1983); *United States v. Exxon Corp.,* 94 F.R.D. 246 (D.D.C. 1981); *Pitney-Bowes Inc. v. Mestre,* 86 F.R.D. 444 (S.D. Fla. 1980).

However, most cases which have referred to an "at issue" exception have held that it is applicable only where a party claiming the privilege will be relying on portions of the privileged communication as part of that party's claim or defense. See *e.g., Pittston Co.*

*v. Allianz Insurance Co.,* 143 F.R.D. 66, 71 (D.N.J. 1992) (at issue waiver is inapplicable where the plaintiff in an environmental coverage claim has not sought to use or inject any privileged documents as a part of a claim or defense); *Remington Arms Co. v. Liberty Mutual Insurance Co.,* 142 F.R.D. 408, 415 (D. Del. 1992), and cases cited therein (this waiver doctrine should be limited to cases in which the privileged holder injects the privileged material itself into the case); *Wardleigh v. Second Judicial District Court of the State of Nevada,* 891 P.2d 1180, 1186 (Nev. 1995) (at issue waiver occurs only where the holder of the privilege pleads a claim or a defense in such a way that eventually he or she will be forced to draw upon the privileged communication at trial in order to prevail). Also see *Developments in the Law—Privileged Communications,* 98 Harv. L. Rev. 1450, 1637-43 (1985) (the at issue exception should apply only where the claim or defense can be established with privileged evidence). An at issue exception which applies only where the holder will inject the privileged material into the case reaches a result identical to that produced by the case law which I cited in *Minatronics Corp. v. Buchanan Ingersoll, supra,* which holds that a party waives the privilege if it intends to rely on portions of the privileged communications in establishing a claim or defense.

Other courts that have considered the argument that a party waives the attorney-client privilege by making its state of mind an issue in the case have found the argument to be without merit. These cases simply apply the case law that governs any other attorney-client communication. See *Remington Arms Co. v. Liberty Mutual Insurance Co.,* 142 F.R.D. at 414-16 n.6, which cites and analyzes most of the reported cases that have addressed the at issue exception following the *Hearn*

court's adoption of this exception. In *Remington Arms Co. v. Liberty Mutual Insurance Co., supra,* the court rejected *Hearn* stating that a waiver of the attorney-client privilege should not be based on the needs of the opposing party for information that is relevant and might not otherwise be obtained. This would lead to an ad hoc determination that ignores the system-wide role of the attorney-client privilege and undermines any confidence that parties place in that privilege. This opinion stated that courts have generally rejected the idea that a party waives the attorney-client privilege by bringing a suit or raising a defense—an unlimited doctrine of waiver reflects a hostile attitude toward the existence of an attorney-client privilege. Also see *NL Industries Inc. v. Commercial Union Insurance Co.,* 144 F.R.D. 225, 229-30 (D.N.J. 1992); *Transamerica Title Insurance Co. v. Superior Court of Santa Clara County,* 233 Cal.Rptr. 825 (Cal.App. 1987); *State ex rel. United States Fidelity and Guarantee Co. v. Montana Second Judicial District Court,* 783 P.2d 911, 915-16 (Mont. 1989) (insurance bad faith claim).

In *Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co.,* 32 F.3d 851 (3d Cir. 1994), the insureds sued to compel their insurance carrier to defend and indemnify them in AIDS-related claims involving the insureds' infected blood products. The defense of the insurance company was that the transmission of HIV was known to the insureds when the policies were purchased. The district court held that the insureds had waived the attorney-client privilege by filing this action for coverage, thereby putting at issue their knowledge of facts relating to the claims. The Court of Appeals for the Third Circuit reversed. While the opinion did not cite any Pennsylvania appellate court case law, it stated that the case is governed by the privilege rules of Penn-

sylvania which it described as having no principles or rules unique to Pennsylvania that should control the resolution of its decision. *Id.* at 861-62. The court held that under established law governing the attorney-client privilege a party does not lose the privilege to protect attorney-client communications from disclosure in discovery whenever a party's state of mind is put in issue in the action. It characterized *Hearn* and its progeny as decisions "of dubious validity." *Id.* at 864. It stated that while these opinions "dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed." It concluded that relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and "that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Id.* The opinion recognized that the attorney-client privilege is intended to assure a client that he or she can consult with counsel in confidence. The interests to be served by the privilege would be undermined if the client faces the greatest risk of disclosure for what may be the most important matters that it discussed with counsel.

While plaintiffs suggest that any implied waiver doctrine can be confined to bad faith claims against insurance companies, plaintiffs' justification for this exception to the attorney-client privilege (the *Hearn* justification that a court should not decide a factual issue regarding the state of mind of a party without consideration of all relevant evidence) would justify the loss of the privilege in a wide variety of cases because of the ability of a creative party to make the state of mind of another party an issue in the case. Consider, for example, *Mitchell v. Superior Court of*

*Fresno County,* 691 P.2d 642 (Cal. 1984), where the plaintiff-wife contended that exposure to water contaminated with a specific chemical (DBCP) had caused severe emotional pain, anguish, and distress. In discovery, she stated that she had discussions with her counsel regarding the consequences of exposure to this chemical. The chemical company whom the plaintiffs sued then sought to discover all communications between the plaintiff-wife and her counsel on the ground that her emotional problems were a consequence of defamatory and false information provided by her counsel. The lower court compelled the discovery; the California Supreme Court reversed. It concluded that the meager admission that the plaintiff-wife had discussed the consequences of exposure to DBCP with her counsel did not constitute a waiver of the privilege under traditional case law. The court then rejected the argument that there was an implied waiver because the plaintiff's state of mind was an issue. The court said that if discovery is granted here, it is logical to expect that in most personal injury cases where emotional distress is alleged by reason of feared future consequences, the door would be opened for broad discovery of discussions between the client and counsel which have traditionally been protected. The court found that this would constitute "an unwarranted abrogation of the attorney-client privilege—a privilege which is fundamental to the free and open exchange of information and advice between lawyers and their clients, and more broadly to the proper functioning of our judicial system." *Id.* at 654.

This ruling that a party does not automatically waive the attorney-client privilege by making its state of mind an issue in the case does not create a license to lie. An attorney who claims the privilege on behalf of a

client cannot do so without first reviewing the communications for which the privilege is sought. This attorney has a duty to prevent a client from offering false evidence. See Rule 3.3 of the Rules of Professional Conduct. This means, for example, that in an environmental coverage case counsel for the insured cannot permit a representative of the insured to testify that the insured first learned that certain underground water was polluted in January 1993 if this testimony is inconsistent with a communication between the insured and its counsel in 1991 which referred to a pollution problem involving this same underground water.

Finally, while existing Pennsylvania appellate case law characterizes the attorney-client privilege as an absolute privilege, I recognize that the Pennsylvania appellate courts have never addressed the claim that Pennsylvania should adopt an exception where the state of mind of a litigant is an issue in the case. However, the Pennsylvania appellate courts have consistently sought to preserve the integrity of the attorney-client privilege because of its significance to a socially important relationship. See *In re Investigating Grand Jury,* 527 Pa. 432, 438-39, 593 A.2d 402, 405 (1991), where the Pennsylvania Supreme Court, citing *Commonwealth v. Maguigan,* 511 Pa. 112, 124, 511 A.2d 1327, 1333 (1986), said that "the roots of the attorney-client privilege are firmly entrenched in our common law, described fittingly as 'the most revered of our common-law privileges.' " The purpose of the privilege "is to create an atmosphere that will encourage confidence and dialogue between attorney and client. . . . The intended beneficiary of this policy is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney com-

munication." *Id.* at 439-40, 593 A.2d at 406. (citations omitted)

The justifications for the privilege are equally applicable where the state of mind of a party may be an issue in the case. In the field of insurance, for example, there is substantial legislation and case law that is intended to set the standards of behavior of insurance companies. The legal system governing insurance law is complicated, so we cannot assume that lay people working for insurance companies will, on their own, be aware of and have a proper understanding of the laws that are intended to shape their behavior.

We want insurance companies to involve attorneys in their decision-making where the claims may be complicated. We want a free flow of information between a lawyer and representatives of an insurance company. If the law encourages an honest, careful, and prompt analysis of the claims by counsel for insurance companies, claims are more likely to be resolved in a manner envisioned by the laws governing insurance companies. *NL Industries Inc. v. Commercial Union Insurance, supra; Transamerica Title Insurance Co. v. The Superior Court of Santa Clara County, supra; State ex rel. United States Fidelity and Guarantee Co. v. Montana Second Judicial District Court, supra.*

These honest, open, and candid exchanges are less likely to occur if the communications between counsel and the decision-makers of the insurance companies are discoverable in bad faith suits. The Pennsylvania appellate courts have consistently reaffirmed the underlying rationale for the attorney-client privilege that the privilege is a necessary condition for a candid exchange of information between counsel and a client and that the social good derived from the performance of attorneys acting for their clients outweighs the harm

that may come from the suppression of relevant evidence in a specific case.

For these reasons, I enter the following orders of court:

## ORDER

## No. GD95-4466

On May 22, 1996, it is hereby ordered that:

(1) documents which defendant withheld on the ground that they are protected by Pa.R.C.P. no. 4003.3 shall be produced within 20 days; and

(2) documents that were withheld on the ground that they are protected by the attorney-client privilege need not be produced provided that the defendant will not be raising advice of counsel as a defense to the bad faith claims.

## ORDER

## No. GD94-18921

On May 22, 1996, it is hereby ordered that:

(1) documents which defendant withheld on the ground that they are protected by Pa.R.C.P. no. 4003.3 shall be produced within 20 days;

(2) paragraph (1) does not apply to documents prepared by Erie Insurance Exchange following the arbitration hearing on plaintiff's claim for uninsured motorists benefits; and

(3) documents that were withheld on the ground that they are protected by the attorney-client privilege need not be produced provided that the defendant will not be raising advice of counsel as a defense to the bad faith claims.