## Tate v. Philadelphia Savings Fund Society

*Morton A. Slifkin,* for plaintiff.

*Phillip B. Toran,* for defendant PSFS.

*Donna Mouzayck,* for defendant City of Philadelphia.

*Joan Gerson,* for defendant SEPTA.

AVELLINO, *J.,* September 22, 1987 — On April 9, 1985, Joyce Tate stumbled and fell on a flight of steps leading to the Broad Street Subway Concourse. Shortly thereafter, Walt Hilsee was assigned to inspect the steps and report his findings to Ed Reiher. Hilsee manages the two office buildings that adjoin the stairwell, and Reiher is a claims supervisor. Both are employees of defendant, Philadelphia Savings Fund Society, which allegedly is responsible for maintaining the steps in a safe condition.[1]

PSFS has refused to permit Hilsee to answer questions at his oral deposition regarding what he saw and reported to Reiher. It claims that his findings are protected from discovery since his investigation was done "in anticipation of litigation." Moreover, PSFS has deleted almost all of Hilsee's findings from a memorandum which Reiher later prepared.[2] The claim here is that the deleted mate-

---

1. The City of Philadelphia and SEPTA have also been named as defendants in this action.

2. PSFS disclosed only that Hilsee reported that the steps were concrete and had metal treads.

rial contains mental impressions, conclusions or opinions of the sort which are protected from discovery by Pa.R.C.P. 4003.3.

We find no merit in either assertion.

Meanwhile, because "work product" claims occasion so many discovery disputes, it seems appropriate that we address these in a formal opinion.

## THE HILSEE DEPOSITION

The following colloquy occurred during Hilsee's deposition:

"Q. Did he [Reiher] ask you to inspect the steps in June of 1985?

"A. Yes.

"Q. And did you report to him?

"A. Yes.

"Q. What did you report to him? [Objection, and instruction not to answer.]"

Counsel explained the basis for his objection by saying that Reiher assigned Hilsee to inspect the steps because PSFS had just received a letter from Tate's lawyer which gave notice of a possible claim or lawsuit. In his words, "At that point my client was put on notice that . . . a lawsuit would be coming and, therefore, this [inspection] was done, in my opinion, under the protection of work done in anticipation of litigation."

This objection asserts an anachronism, and ought to be stricken without comment. There is no blanket protection from discovery for work done "in anticipation of litigation." Yet, judging from the transcript, the objection was uttered in good faith by experienced counsel. That troubles us. Accordingly, we offer the following to remind, rather than to instruct.

On December 16, 1978, rule 4003.3 was adopted and all but abolished the so-called work product

privilege which under former rule 4011(d) protected from discovery information secured "in anticipation of litigation or in preparation for trial." The language of the new rule was plain, "[a] party may obtain discovery of any matter discoverable under rule 4003.1 even though prepared in anticipation of litigation. . . ."

Despite this clear directive, some litigants continued to be reluctant to surrender information obtained by their own initiative. In many instances this was understandable since the information sought was damaging to their claim or defense. In others, it was more difficult to fathom and may have had its roots in the notion "that each side should do its own preparation for trial, and that the material so procured was the exclusive property of the procurer." 10 Goodrich Amram 2d, 4003.3:4.

This reluctance spawned a series of reported decisions that began in the spring of 1979 with *Harvey v. Whatley,* 2 Phila. Rep. 443 (1979). In that case, Judge Takiff delivered the first eulogy for former rule 4011(d) and then directed an insurer to produce for inspection *all* of the work it had done in anticipation of litigation, namely, its *entire claim file.* See also *Bowdren v. Street Motor Co. Inc.,* 11 D.&C. 3d 695 (1979) and *Little v. Allstate,* 16 D.&C. 3d 110 (1980). It was becoming increasingly clear that the new rule had inflicted a mortal wound upon "work product."

In an effort to keep it alive, some litigants then tried the exotic. For example, in *McKelvey v. St. Clair Memorial Hospital,* 128 P.L.J. 25 (1979), the defendant, a hospital, urged the court to create a "public policy" exception to Rule 4003.3. It argued that accident reports prepared by its employees were used, in-house, to effect corrective measures which were designed to reduce the risk of harm to

*other patients.* Unless these reports were protected from discovery, it would stop preparing them and would stop doing critical self-analysis of its operations and procedures. The court listened politely, but declined the invitation. See also, *Sabers v. American Hoechst,* 11 D.&C. 3d 478 (1979) which rejected an obtuse interpretation of rule 4003.4, and then directed a defendant to produce copies of statements made by its employees who had firsthand knowledge of relevant matters.

If any last words were necessary, they were delivered by the Superior Court in 1982. It instructed:

"Under the 1978 amendments, subdivision (d) of Rule 4011 was rescinded and eliminated. This subdivision precluded the discovery of information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial, other than information as to the identity or whereabouts of witnesses. *The discovery of trial preparation material is now allowable in accordance with Pa.R.C.P. 4003.3 through 4003.5." McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 455, 450 A.2d 991, 1000 (1982). (emphasis supplied)

In brief, the mere fact that Hilsee inspected the steps because his employer anticipated litigation cannot be used to justify his refusal to answer the questions posed. He is, quite simply, a witness who has firsthand knowledge of relevant matters, viz., the condition of the steps.[3]

---

3. PSFS does not claim that Hilsee is an expert it consulted, but does not expect to call as a witness at trial. See rule 4003.5(a)(3) and *Goldblum v. INA,* 11 D.&C. 3d 354 (1979). At the hearing on this motion, it suggested for the first time that he was its non-lawyer representative. See Pa.R.C.P. 4003.3. We deal with this assertion under the heading, "The Reiher memorandum."

## THE REIHER MEMORANDUM

### Introduction

Hilsee's oral report on the condition of the steps was reduced to writing by Reiher. Plaintiff requested production of this writing, and PSFS resisted. At first, it argued that the entire report was protected from discovery since it had been prepared "in anticipation of litigation." Later, it abandoned this claim and urged instead that Hilsee was its non-lawyer "representative." It then disclosed discrete portions of the report which purportedly contained the only "factual" observations which Hilsee made, namely, that the steps were "concrete" and had "metal treads." The remainder of the report was not disclosed since it allegedly consisted of mental impressions, conclusions or opinions and was, therefore, protected from discovery by rule 4003.3.

Plaintiff disagreed and continued to press for production of the entire report. Her counsel argued that Hilsee was merely an employee of a corporate party who happened to have firsthand knowledge of the condition of the steps shortly after the accident.

Discovery disputes like this are common, and most courts resolve them with a quick in camera inspection of the questioned document. As a consequence, neither we nor counsel could find any reported decisions that addressed the scope of the protection afforded a party's representative, and only one case that offered any guidance on the meaning of the term "representative." Hopefully, this opinion will shed some light on both subjects.

### Discussion

Although Rule 4003.3 authorizes the discovery of trial preparation material, it continues to protect the

work product of a party's lawyer, and also offers a lesser measure of protection for a party's non-lawyer "representative." With regard to the latter, the rule provides that "discovery shall not include disclosure of his mental impressions, conclusions or opinions respecting the value or merit of a claim or defense, or respecting strategy or tactics."[4]

This is a small shield and it offers a representative, who had firsthand knowledge of relevant matters, very little protection from discovery arrows. The other soldiers a party sends off to wage litigation have better armor. For example, when a lawyer conducts an oral interview of a witness, who signs no written statement, his or her notes of the interview are protected from discovery. But the same notes made by a representative are not. 10 Goodrich Amram 2d, 4003.3, and *Breem v. Cappola,* 132 P.L.J. 390 (1984). And when a party retains an expert, if the expert is not expected to be called at trial, the protection offered is almost absolute. Even the identity of the expert is privileged. Discovery of *any* facts known or opinions held by this individual can only be had upon a showing of "exceptional circumstances." See rule 4003.5(a)(3) and *Goldblum v. INA,* 11 D.&C. 3d 354 (1979). Moreover, even when the expert is identified as a trial witness, discovery is limited to a mere synopsis of the testimony expected, unless the court grants an application for "cause shown." See rule 4003.5(a)(2).

Unlike a lawyer or an expert witness, a representative plays a role in litigation that is elusive and hard to define. Sometimes he or she is just a foot soldier whose every activity is supervised by some-

---

4. The federal rules make no distinction between a party's attorney and his representatives. Our rules do.

one in a position of authority. On other occasions, a representative may occupy a position of command, and exercise enormous and seemingly autonomous authority. In this capacity a representative usually enjoys a relationship with trial counsel that rivals that of the party counsel was engaged to represent.

The rules committee did not attempt to define the term "representative." Chances are it recognized that doing so would require too large a net. It did, however, offer some examples of the limited protection afforded such individuals in its explanatory note. Each example involved an insurance company employee. This, in turn, caused one misguided litigant to conclude that only insurance company employees could be "representatives." In *Equitable Gas Co. v. Walbrook Ins. Co.*, 133 P.L.J. 216 (1984), Judge Wettick dismissed that notion as nonsense, and ruled that a party did not have to be insured in order to enjoy the services of a "representative." Since that was the only issue before our learned colleague, he was not obliged to offer a precise definition. He did, however, suggest that any person, not a lawyer, who has a tie to a party which might require or occasion participation in decisions respecting the value or merit of a claim or defense, or respecting strategy or tactics, should be regarded as a representative of that party for the purposes of Rule 4003.3. We accept that suggestion and so hold.

By this standard, Hilsee, an employee, may be regarded as PSFS' representative. This decision obliges us to look next to the content of the challenged communication. This is so because Rule 4003.3 does not immunize every mental impression, opinion or conclusion expressed by a representative. Protection is available only for those "respecting" the value or merit of a claim or defense, or a strategy or tactic.

Comments of this sort, by a party's representative, have no evidentiary value. At best, they are inexpert speculation or conjecture, and, at worst, they are just plain gossip. They may be of interest to an adversary, but they are not probative on any of the issues joined for trial, except on those rare occasions when the conduct of the representative is, itself, the subject of the litigation. In such cases, the comments are discoverable. See, for example, *Little v. Allstate,* 16 D.&C. 3d 110 (1980). Meanwhile, in the ordinary case, keeping such comments confidential encourages them, and that is important. Gossipy chitchat, especially between a ranking representative and counsel, often leads to an accurate assessment of the case by one or the other, or both. See *Equitable Gas Co. v. Walbrook Ins., supra.*

Such considerations are absent whenever a representative happens to acquire firsthand knowledge of relevant matters. What the representative knows, by definition, is evidentiary. Indeed, the representative may be called as a witness at trial. And that is precisely how he is regarded by our rules — as an ordinary or lay witness as to those matters. By way of illustration, if a representative and a lawyer had inspected the steps just after the accident in this case, each would likely acquire firsthand knowledge and consequently become a witness. Discovery of the information each acquired from the inspection is authorized by our rules. But the scope of permissible discovery is dramatically different. For example, if the lawyer made notes, the notes would be completely immunized. The representative's notes would be subject to scrutiny. More important, with the lawyer, every mental impression, conclusion or opinion he formed or expressed as a result of the inspection is a part of his "work product" and protected from discovery. With the representative, the im-

pressions, conclusions or opinions expressed or held are subject to discovery, *unless* they happen to fall within one or more of the protected categories, namely, "value," "merit," "strategy" or "tactics." Within these categories the representative functions as an adviser, confidant or gossip and enjoys protection from discovery for his or her non-evidentiary communications. Outside of these categories, the representative is, quite simply, a lay witness.

Meanwhile, our discovery rules focus upon information and information comes in all sorts of linguistic packages. For example, if a lay witness had chanced upon the scene just after the accident and happened to notice the condition of the steps, we would not be surprised if that witness furnished a written statement that tightly intertwined fact, impression and opinion. The witness might say, *inter alia*, that the steps were "falling apart," and were a "public menace." At trial, we would not permit a lay witness to offer an opinion on an ultimate issue. Yet, we cannot bar production of the very same opinion before trial, so long as it is reasonably calculated to lead to the discovery of admissible evidence. See rule 4003.1. Chances are that a few follow-up questions of the witness will lead to the factual basis, if any, for the inadmissible opinion expressed. This factual basis can then be furnished to the jury, and it can decide for itself what conclusions are warranted.

With this in mind we now examine the entire Reiher memorandum. The italicized material had been previously deleted.

"Per Walt Hilsee, Bldg. Mgr. for Ave. of Arts
June 25, 1985
"(1) Metal treads on all steps.

"(2)  *3 steps have depressions*
      *1st — 3d & 4th*
      *Metal treads deteriorating — causing*
      *depressions.*
      *Safety hazard.*
"(3)  Steps are concrete.
      Above description is for the set of steps
      from Broad Street sidewalk to the 1st
      landing leading to the subway concourse.
      EJR"

In our view, this is nothing more than a straight-forward recitation of what Hilsee saw when he inspected the steps.[5] It is the language equivalent of a photograph. A word picture.

In assembling this snapshot, Hilsee used words like "deteriorating" and "depression," which PSFS urges are statements of mental impression. We decline this invitation to play at word games. Frankly, the line that separates fact from impression is blurred and hard for us to see. PSFS also urges, and we agree, that "safety hazard" is an expression of opinion. This argument, however, misses the mark. Opinions are proper subjects of discovery under rule 4003.1, unless protected therefrom by some other rule, a statute or our state or federal constitution. 10 Goodrich Amram 2d, 4003.1:24.

The question, instead, is whether the opinion expressed can be reasonably interpreted as falling within one or more of the protected categories specified by rule 4003.3. We think not. The opinion expressed, "safety hazard," is part of the description of the steps, and the description is simply that and nothing more. It does not pretend to be, nor is it, a

---

5. Although the handwriting is Reiher's, it is clear that Reiher is merely recounting what Hilsee told him. Note, "Per Walt Hilsee."

communication respecting "value," "merit," "strategy" or "tactics." To put it bluntly, a word picture of a flight of steps does not become transformed into a photograph of the merit or value of a claim simply because viewing it happens to be an unpleasant experience for the party who hired the photographer.

Meanwhile, once Hilsee's oral report was reduced to writing by Reiher, it became a statement of a witness. For this reason, production was mandated by rule 4003.4. *Sabers v. American Hoechst, supra.* See also, *Breem v. Cappola,* 132 P.L.J. 390 (1984), holding that summaries of witness interviews prepared by a private investigator hired by plaintiff's counsel were discoverable by defendant.

Finally, although we have treated Hilsee as a "representative" of PSFS for the purposes of this motion, nothing we have said should be construed as a holding that all the employees of a large corporation are representatives of that company whenever it happens to become a party to litigation.

For these reasons, then, we direct that the following order be entered.

## ORDER

And now, this September 22, 1987, defendant, PSFS, shall:

(1) Produce witness Hilsee, upon due notice, at the offices of plaintiff's counsel, for the completion of his oral deposition, not later than 60 days hence.

(2) Produce for inspection and copying the entire Reiher memorandum not later than 10 days hence.