**MARKWEST LIBERTY MIDSTREAM & RESOURCES, LLC, Petitioner**

v.

**CLEAN AIR COUNCIL, and Commonwealth of Pennsylvania Department of Environmental Protection, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 17, 2013.

Decided May 15, 2013.

---

Lawrence A. Demase, Pittsburgh, and John J. Jacus, Denver, CO, for petitioner.

Michael J. Heilman, Assistant Regional Counsel, Pittsburgh, for respondent Department of Environmental Protection.

Jordan B. Yeager, Doylestown, for respondent Clean Air Council.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge, BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

MarkWest Liberty Midstream & Resources, LLC (MarkWest) petitions for review of the July 13, 2012 order[1] of the Environmental Hearing Board (Board) granting in part and denying in part MarkWest's motion for a protective order and the Clean Air Council's (CAC) motion to compel discovery in the matter of *Clean Air Council v. Commonwealth of Pennsylvania Department of Environmental Protection and MarkWest Liberty Midstream & Resources, LLC,* EHB Docket No. 2011–072–R. We vacate in part and remand to the Board.

MarkWest is a natural gas gathering and processing company with facilities in Washington County, Pennsylvania. Its business is focused on the Marcellus Shale and, in 2010, MarkWest spent approximately $458.7 million to develop its midstream infrastructure in the Marcellus Shale. (Reproduced Record (R.R.) at 257a.)

On September 15, 2010, MarkWest submitted a fourth plan approval application

---

**1.** The Board mistakenly referred to the Clean Air Council as the Clean Water Council in its July 13, 2012 opinion and order, and it corrected the error in a revised opinion and order issued on July 26, 2012.

to the Department of Environmental Protection (Department) to install and begin operation of a fractionator tower and additional process heater at MarkWest's Houston Gas Processing Plant in Chartiers Township, Pennsylvania. (R.R. at 286a.) On April 13, 2011, the Department approved the application and issued Plan Approval 63–00936D. (R.R. at 15a.)

CAC appealed the Department's approval to the Board on May 13, 2011, alleging that the Department failed to aggregate MarkWest's Houston Gas Plant with multiple MarkWest compressor stations in Washington County, which would have subjected the fourth plan approval to the requirements of the Pennsylvania Air Pollution Control Act [2] and the federal Clean Air Act.[3, 4] (R.R. at 1a, 10a–12a.)

During the period from August through October 2011, CAC sent MarkWest discovery requests seeking various categories of documents and information. (R.R. at 367a.) MarkWest objected to the disclosure of many documents on the grounds that they contained trade secrets and/or confidential business information and declined to produce information until an adequate protective order was in place. MarkWest then filed a motion for a protective order,[5] which the Board denied on December 1, 2011. (R.R. at 16a, 83a.)

On December 14, 2011, CAC requested that the Board issue an order compelling MarkWest and the Department to produce all documents responsive to its discovery requests without restrictions. (R.R. at 222a.) In early 2012, MarkWest filed five motions for a protective order regarding five separate categories of claimed trade secrets and/or confidential business information, requesting that the Board enter a protective order restricting CAC's public disclosure, use, and retention of the documents at issue in the first four categories, and permitting non-production of the documents at issue in the fifth category. The five categories were: (1) unredacted versions of MarkWest's letter responses and attachments submitted to the Department regarding the plan approval; (2) operational data; (3) maps and design documents; (4) confidential communications; and (5) gathering and processing agreements and correspondence with its customer Range Resources.

CAC and the Department filed responses to MarkWest's motions; CAC opposed the motions and the Department generally supported the motions. The Board heard oral arguments for CAC's motion to compel and MarkWest's motions for a protective order on February 16, 2012. (R.R. at 1182a.) The Board's chief judge conducted an in-camera review, examining each document at issue. On July 13, 2012, the Board issued an opinion and order partially granting and partially denying CAC's motion to compel and MarkWest's motions for a protective order.

The Board's order: (1) granted MarkWest's motion for a protective order and denied CAC's motion to compel with respect to certain classes of documents, finding that they contained confidential business information and need not be pro-

---

2. Act of January 8, 1960, P.L. (1959) 2119, as *amended,* 35 P.S. §§ 4001–4015.

3. 42 U.S.C. §§ 7401–7700.

4. CAC argued that the Clean Air Act mandates that the Department aggregate MarkWest's multiple emissions sources instead of considering each source separately when making air permitting decisions. (R.R. at 1435a.)

5. The parties attempted to negotiate a stipulated protective order governing the use of documents containing MarkWest's alleged trade secrets/confidential business information but were unable to reach an agreement.

duced; (2) ordered that MarkWest produce other classes of documents to CAC, filed under seal; and (3) ordered that MarkWest produce all other documents not included in sections 1 and 2 to CAC without restriction.[6] (Board's order at 11–14.) The Board stated, "we disagree that many of the documents [MarkWest has] designated as Confidential Business Information should be so classified in the context of this litigation as either (1) not being trade secrets or . . . confidential and (2) even if so qualified the right of [CAC] to access these documents . . . outweighs any alleged harm." (Board's order at 8.) The Board also noted, "[a]s we move closer to a hearing we will consider what documents and testimony, if any, should be shielded from public access." (Board's order at 10.)

On July 23, 2012, MarkWest provided CAC with the documents from section 2 of the Board's order and many of the documents from section 3 of the order. However, MarkWest declined to produce a class of 60 documents[7] (the Documents) and indicated to CAC that it intended to appeal the Board's order with respect to the Documents.[8]

MarkWest now appeals to this Court and requests that we: (1) reverse the Board's order as it relates to the Documents;[9] (2) reverse the order to the extent that it permits CAC's unrestricted

disclosure, use, and/or retention of documents produced pursuant to sections 2 and 3 of the order, including the Documents; and (3) remand with instructions to amend the order to require that CAC return or destroy such documents upon final disposition of the matter below, with the exception of those documents which are made public during the proceedings below, by further order of the Board, or by stipulation of the parties.

On December 17, 2012, the Department filed a brief requesting that this Court afford MarkWest the relief it seeks and CAC filed a brief requesting that MarkWest's appeal be denied.

■ Before we address the merits of an appeal of an interlocutory order, we must determine whether the order is appealable. *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578, 583 (Pa.Super.2006). Here, we focus on whether the Board's order is appealable as a collateral order under Pa.R.A.P. 313 (Rule 313).

■ Under Rule 313, an appeal may be taken as of right from a collateral order of an administrative agency or court. Pa. R.A.P. 313(a). An order is an appealable collateral order if: (1) the order is separable from the main cause of action; (2) the right involved is too important to be de-

---

**6.** The Board rejected MarkWest's proposed restrictions, holding that filing the documents under seal would protect MarkWest by preventing the general public from accessing the documents.

**7.** These documents were primarily the focus of MarkWest's second and fourth motions for a protective order—operational data and confidential communications.

**8.** On July 31, 2012, the parties entered into a stipulation providing for the production of the Documents to CAC, but subject to the restrictions of section 2 of the Board's July 13, 2012

order, pending resolution of MarkWest's appeal to this Court. (R.R. at 1464a.) The stipulation allows the appeal below to move forward and, on August 6, 2012, the Board approved the parties' joint proposed amended case management order. MarkWest had previously filed a motion for partial stay of the Board's order, but withdrew it following the stipulation. (R.R. at 1450a.)

**9.** The documents have been filed under seal pursuant to this Court's October 16, 2012 order.

nied review; and (3) the claim would be irreparably lost should review be denied. Pa.R.A.P. 313(b); *Ben v. Schwartz,* 556 Pa. 475, 481, 729 A.2d 547, 550 (1999). Each prong of the collateral order doctrine must be met before an order may be considered collateral. *Melvin v. Doe,* 575 Pa. 264, 272, 836 A.2d 42, 47 (2003).

If the resolution of an issue concerning a challenged trial court order can be achieved independent from an analysis of the merits of the underlying dispute, then the order is separable for purposes of determining whether the order is a collateral order pursuant to Rule 313. *Commonwealth v. Dennis,* 580 Pa. 95, 106–07, 859 A.2d 1270, 1277–78 (2004). Here, the order is clearly separable because the protective orders for the documents at issue may be addressed without analysis of the underlying claim of whether the Department properly issued approval of MarkWest's application. *See Schwartz,* 556 Pa. at 483, 729 A.2d at 552 (the issue of privilege was separable from the main cause of action because it could be addressed without analysis of the alleged negligence of the treating dentists). Therefore, the first prong of the analysis is satisfied.

An issue is important under Rule 313 if the issue implicates rights that are deeply rooted in public policy and impacts individuals other than those involved in the litigation of that case. *Dennis,* 580 Pa. at 108, 859 A.2d at 1278. The right to confidentiality in matters involving proprietary rights and trade secrets is rooted in public policy and impacts individuals and entities other than those involved in the current litigation. *Dibble v. Penn State Geisinger Clinic, Inc.,* 806 A.2d 866, 870 (Pa.Super.2002). The issue in this appeal concerns protective orders for discovery and dissemination of MarkWest's trade secrets and/or confidential business information;

therefore, the second prong of the analysis is also satisfied.

Discovery orders involving privileged material are generally appealable because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot. *Rhodes v. USAA Casualty Insurance Company,* 21 A.3d 1253 (Pa.Super.2011); see *Dibble,* 806 A.2d at 870 ("there is no question that if the documents which have been disclosed are in turn disseminated ... appellate review of the issue will be moot because such dissemination cannot be undone"). MarkWest currently appeals a discovery order involving privileged material that if disclosed or disseminated could not be undone, and thus requires immediate appellate review. Accordingly, we conclude that the Board's order is an appealable collateral order under Rule 313.

We turn now to the merits of MarkWest's appeal. Initially, we note that in reviewing the propriety of a discovery order, generally the standard of review is whether the trial court committed an abuse of discretion; however, to the extent that the reviewing court is faced with questions of law, the scope of review is plenary. *Rhodes,* 21 A.3d at 1258.

MarkWest argues that the Board applied the incorrect substantive legal standard in ruling on its motions for a protective order, and, therefore, failed to properly shift the burden to the CAC to demonstrate that the documents it requested were relevant and necessary. In support of its argument, MarkWest cites *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578 (Pa.Super.2006), as the controlling case for analyzing requests for protective orders under Pa.R.C.P. No. 4012(a)(9) (Rule 4012(a)(9)). CAC argues that *Crum* is

not controlling, that this case should be analyzed under *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir.1994), and that the Board properly determined that CAC was not obligated to prove that the requested documents were relevant and necessary to its case because MarkWest failed to first establish good cause for a protective order.[10]

A party is entitled to discovery of any matter not privileged which is relevant to the subject matter in the action. Pa. R.C.P. No. 4003.1. Rule 4012(a)(9) provides: "Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person ... including ... that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way." If a party establishes that information sought is a trade secret or confidential business information, then it has established good cause under Rule 4012(a)(9). *Crum,* 907 A.2d at 585–86.[11]

The Board, though it never explicitly stated such, seemingly applied the *Pansy* standard, and CAC argues that *Pansy,* not *Crum,* provides the relevant standard that this Court should apply.[12] Neither a Pennsylvania Superior Court nor a Third Circuit Court of Appeals case is binding on this Court,[13] and neither the *Crum* analysis nor the *Pansy* analysis has been applied by this Court.

In *Pansy,* the court adopted a case-by-case balancing test that weighs the harm to the party seeking protection against the importance of disclosure to the public in determining whether an order of confidentiality should be granted. *Pansy,* 23 F.3d at 787. However, the issue in *Pansy* involved confidentiality orders in a civil rights case instituted by a former public employee against a borough and did not concern trade secrets or confidential business information. Furthermore, *Pansy* has never been adopted or used by a Pennsylvania court to analyze Rule 4012(a)(9) requests or determine whether good cause exists under Rule 4012(a)(9).

In *Crum,* the Superior Court adopted and applied the federal standard regarding Federal Rule of Civil Procedure 26(c)(7)[14]

---

**10.** In its brief, the Department requests that this Court adopt the *Crum* standard and reject *Pansy* as controlling or applicable here.

**11.** In *Crum,* the parties did not dispute that the information sought constituted valuable trade secrets. *Crum,* 907 A.2d at 585. Here, the parties dispute whether the documents at issue contain trade secrets or confidential business information.

**12.** CAC argues that if a party establishes that information sought constitutes trade secret/confidential business information, then whether it should be produced is controlled by *Crum,* and the extent to which production should be accompanied by restrictions is controlled by *Pansy.* However, this contention is unsupported by any Pennsylvania or federal law; Rule 4012(a)(9), by its clear language, encompasses both protective orders restricting production and protective orders for restrictive disclosure and use. CAC's argument that we should first apply *Crum* to determine whether documents should be produced and then apply *Pansy* to determine what, if any, restrictions should accompany the documents, is unpersuasive. All requests under Rule 4012(a)(9) are analyzed under the same standard.

**13.** *See Commonwealth v. Allen,* 59 A.3d 677, 679 (Pa.Cmwlth.2012) (it is well-settled that decisions of the Superior Court are not binding upon the Commonwealth Court), and *Meyer v. Gwynedd Development Group, Inc.,* 756 A.2d 67, 69 (Pa.Super.2000) (decisions of the Third Circuit Court of Appeals are not binding on Pennsylvania courts).

**14.** Federal Rule of Civil Procedure 26(c)(7) is essentially identical to Rule 4012(a)(9).

to Rule 4012(a)(9) requests for a protective order: if a party establishes that the requested information constitutes trade secrets/confidential business information, then the burden shifts to the party seeking discovery to demonstrate that production is relevant and necessary, and that the necessity outweighs the harm of disclosure. *Id.* at 587. If the party seeking discovery makes such a showing, then the trial court may order disclosure as it sees fit. *Id.*

The Superior Court adopted the federal standard in *Crum* because Pennsylvania affords trade secrets great protections and has a strong public policy in favor of privacy rights in matters involving trade secrets. *Crum*, 907 A.2d at 585. Like our sister court, we conclude that the balancing test in *Pansy* does not adequately address those strong privacy rights and protections and we are similarly persuaded that the standard utilized in *Crum* fairly balances the needs and concerns of the owner of the trade secrets with those of the party seeking disclosure. Therefore, we herein officially adopt the standard in *Crum* for requests for protective orders under Rule 4012(a)(9).

Accordingly, we hold that a party seeking a protective order under Rule 4012(a)(9) must initially establish that the information it seeks to protect is a trade secret or confidential business information. The following factors are to be considered in determining whether information constitutes a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the party to guard the secrecy of the information; (4) the value of the information to the party and to its competitors; (5) the amount of effort or money expended by the party in develop-

ing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Crum*, 907 A.2d at 585. The crucial criteria for determining whether information constitutes a trade secret are substantial secrecy and competitive value to the owner. *Id.*

Once a party establishes that the information sought is a trade secret, the burden shifts to the requesting party to demonstrate, by competent evidence, that there is a compelling need for that information and that the necessity outweighs the harm of the disclosure. *Id.* at 587. The trial court or administrative agency may then order disclosure or disclosure only in a designated way.

In this case, the Board's decision does not set forth the above analysis, and, therefore, remand is necessary.

We note that although the Board stated that many of the documents for which MarkWest sought a protective order should not be classified as trade secrets, the Board also stated that even if the documents are trade secrets or confidential business information, CAC's right to access them outweighs MarkWest's harm suffered by production. (Board's order at 8.)

The Board did not identify which documents contained trade secrets and which did not, and it is not clear whether the Board determined that CAC had shown that the documents that are trade secrets and/or confidential business information were relevant and necessary to CAC's case. Therefore, on remand, the Board must apply the factors set forth herein and specify which documents contain trade secrets and/or confidential information and which do not. After doing so, the Board must determine whether CAC has demonstrated a compelling need for the informa-

tion sought which outweighs the harm of disclosure.

 We decline to rule on the issue of protective orders regarding CAC's use, disclosure, and retention of MarkWest's documents produced during discovery. The Board has not yet ruled on these issues and reserved jurisdiction to issue post-litigation protective orders at the completion of the proceeding below, and it will do so in accordance with the legal standard adopted herein.[15]

Accordingly, we vacate section 3 of the Board's order with respect to the Documents and remand to the Board with instructions to: (1) specify which documents are trade secrets and/or confidential information; and (2) apply the proper legal standard to the documents which are found to be trade secrets and/or confidential business information.

### ORDER

AND NOW, this 15th day of May, 2013, section 3 of the Environmental Hearing Board's July 13, 2012 order with respect to the class of 60 documents for which MarkWest Liberty Midstream & Resources, LLC sought protective order is vacated and this matter is remanded to the Environmental Hearing Board with instructions to identify the documents that are trade secrets and/or confidential business information, and apply the proper legal standard to those documents that are trade secrets and/or confidential business information to determine whether a pro-

tective order should be issued under Pa. R.C.P. No. 4012(a)(9).

Jurisdiction relinquished.

---

15. We note that the Board mischaracterized discovery as a public process (Board's order at 4, 10.); discovery is an open process among the parties to litigation, but it is not an open process between the parties to litigation and the public. Liberal discovery is allowed for the purpose of preparing a litigant's case, and a litigant has no right to disseminate private documents gained through the discov-

ery process. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Discovery materials not filed with the court or an agency or used in a litigant's case are not "public." Moreover, "restraints placed on discovered, but not ... admitted, information are not a restriction on a traditionally public source of information." *Id.* at 32, 104 S.Ct. 2199.