IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenyatta Mwambu, a minor, by his :
parents and natural guardians, Paul :
S. Mwambu and Josephine Kyazze :
and Paul S. Mwambu and Josephine :
Kyazze, in their own right :
:
v. : No. 1128 C.D. 2020
: Submitted: February 7, 2022
:
Monroeville Volunteer Fire Company :
#4, :
Appellant :

BEFORE: HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                                FILED: March 14, 2022

Appellant Monroeville Volunteer Fire Company #4 (Appellant) appeals to this Court to review the October 13, 2020 Order of the Court of Common Pleas of Allegheny County (trial court) directing Appellant to produce certain documents, written by its insurer, with specific redactions removed that Appellant had made when initially responding to a discovery request. Appellant argues that its initial, more heavily redacted version of the document protects materials subject to attorney-client privilege and the work product doctrine, Pa.R.Civ.P. 4003.1 and 4003.3. Appellant also argues that the Order is immediately appealable pursuant to the collateral order rule, Pa.R.A.P. 313. Upon review, we agree that the Order is immediately appealable and affirm the trial court's order.

## Background

Appellant is a municipal government agency which, in addition to its role as a volunteer fire company, provides emergency medical services. Reproduced Record (R.R.) at 6a. On May 9, 2019, an ambulance driven by an employee of Appellant struck and severely injured Kenyatta Mwambu, a 17-year-old boy, while he was jogging in the crosswalk of a busy intersection. *Id.* at 7a. On October 19, 2019, Mwambu and his parents (together, Appellees) filed a complaint in the Court of Common Pleas of Allegheny County, alleging that negligence by the ambulance driver caused the various injuries. *Id.* at 3a. Appellant's insurance carrier retained counsel to protect its own and Appellant's interests. *Id.* at 94a. Counsel entered their appearances on Appellant's behalf on November 7, 2019. *Id.*

Several months of discovery followed. In response to a discovery request, Appellant provided Appellees two documents: a copy of notes written by employees of Appellant's insurance carrier regarding the claim, and an accompanying privilege log pertaining to these notes. *Id.* at 93a. The six pages of claim notes were compiled between June 4, 2019, and May 5, 2020. Nearly all were authored by Norman Coutant, whom Appellant refers to as a claim handler. *Id.* at 56a-61a. Approximately 80% of the file had been redacted by Appellant's counsel before it was shared. *Id.*

The privilege log, dated July 7, 2020, noted the dates on which claim note entries had been made, their authors, and, under a column titled "Privilege Basis," gave at least one of four different one or two letter codes: "AC" (which a key defined as "attorney-client privilege"), "MI" ("mental impressions, work product, evaluations, theories, litigation strategy etc."), "R" ("relevance"), or "PC" ("personal/confidential information"). *Id.* at 52a-54a. Of the 32 log entries, 29 refer to multiple privilege bases, but do not indicate the specific redaction to which they

correspond. *Id.* Unlike the claim notes themselves, which include a date and time for each entry, the privilege log only gives dates, which leaves it sometimes unclear as to which entries the log is referring. The "Privilege Basis" column includes no text other than the four codes. *Id.*

Appellees' counsel challenged many of the redactions arguing that relevance "is not the standard for discovery," and that there are no privileges for "a *non-attorney's work product*" or "personal/confidential information." *Id.* He proposed that, in order to avoid a motion to compel, Appellant's counsel produce a copy of the claim notes "with only 'opinions as to the merit or value of the claim' redacted, since this is the applicable standard." *Id.* (citing Pa.R.Civ.P. 4003.3).

With Appellees' counsel's request unfulfilled for several weeks, Appellees filed a motion to compel discovery in the trial court. *Id.* at 46a. In the motion, Appellees maintained that "the privileges claimed do not exist," and that most or all of the redactions were therefore improper. *Id.* at 49a. Appellant timely filed an answer denying the allegations. *Id.* at 66a.

A hearing on the motion took place on August 25, 2020. *Id.* at 75a. The trial court asked Appellant's counsel whether statements by a non-attorney insurance Adjuster, beyond those strictly regarding the value of a claim, were protected by any privilege. *Id.* at 76a. Counsel explained that Appellees had initiated a lawsuit "pretty quickly" after the event, and that Appellant had retained counsel "almost immediately" thereafter. *Id.* at 76a-77a. According to Appellant's counsel, most of the redactions protected either the insurer's own comments on the litigation, or summaries of discussions it had with Appellant's counsel. *Id.* A wide range of such remarks were therefore entitled to the protection of a non-attorney representative's "mental impressions, conclusions, or opinions regarding the value or merit of a claim

3

or defense or respecting strategy or tactic" under Pennsylvania Rule of Civil Procedure 4003.3. *Id.* at 78a.[1]

Appellees' counsel countered that the "mental impressions" category listed on the privilege log was "overly broad." *Id.* at 79a. He reiterated that the only proper circumstance for such a designation would be "if [an insurance Adjuster] gives an opinion regarding the value of a claim"; "[t]hey can redact that and I have no problem," he stated. *Id.*

Upon hearing the parties' arguments, the trial court conducted an in-camera review of the unredacted claim notes. *Id.* at 87a. On October 13, 2020, the court entered an Order granting in part Appellees' motion to compel. *Id.* at 89a-90a. It directed Appellant to produce to Appellees' counsel a copy of the claim notes with only five specific redactions which made approximately 85% of the document discoverable. *Id.* The Order stated the precise points at which the five redactions could begin and end, but did not provide an explanation of the court's reasoning. *Id.*

---

[1] Appellant's counsel initially maintained that even the fire chief's own opinion on the case was protected work product—a contention which the trial court rejected in the following exchange:

> MS. SIMS [attorney of record for Appellant]: [Another] redaction is the chief's opinion regarding the defense of the case. And that was redacted under 4003.3.
> THE COURT: Whoa, whoa, whoa, whoa. Stop, stop, stop. How does 4003—the chief isn't a claims Adjuster. He's not working on the case. He's a party. How are his mental impressions protected by that rule? Help me with that one. If the chief says—
> MS. SIMS: Why wouldn't he qualify as a representative of the party? He is a party.
> THE COURT: No, no, no, no, no. I think that—Amy, I think that is only applicable—look, you don't get to protect [a] party's mental impressions under that rule. There's no way you do.
> MS. SIMS: Okay.
> THE COURT: You get to protect a representative, i.e., the carrier, whomever, who is working with the lawyer who is valuing the claim. . . .
> MS. SIMS: Well, Your Honor, that was our position, it was under 4003.3. But we'll take the Court's ruling on the issue.

R.R. at 85a-86a.

Appellant filed a motion for reconsideration that was denied without argument. Appellant timely filed an interlocutory appeal to this Court.

## Issues

As a threshold matter,[2] Appellant argues that an immediate appeal of the trial court's Order is permitted under the collateral order rule, Pa.R.A.P. 313.[3] Appellant further argues that the trial court committed legal error by ordering the production of materials protected by attorney-client privilege and the work product doctrine, Pa.R.Civ.P. 4003.1 & 4003.3.[4]

## Discussion

### 1. *Appealability Under the Collateral Order Doctrine*

It is a well settled legal principle in this Commonwealth that an appeal lies only from a final order, unless otherwise permitted by rule or statute. *McCutcheon v. Phila. Elec. Co.*, 788 A.2d 345, 349 (Pa. 2002). The so-called collateral order doctrine permits one such exception. It provides that an appeal may be taken as of right if (1) it is from an order separable from, and collateral to, the main cause of action; (2) the right involved is too important to be denied review; and (3) the claim would be irreparably lost if review is denied. *Ben v. Schwartz*, 729 A.2d 547, 550 (Pa. 1999) (citing Pa. R.A.P. 313).

---

[2] On December 15, 2020, this Court instructed the parties to address in their briefs the question of whether the trial court's October 13, 2020 Order is an appealable collateral order.

[3] Whether an order is appealable under the collateral order doctrine is a question of law, subject to a *de novo* standard of review, and the scope of review is plenary. *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018).

[4] In general, when reviewing a discovery order, an appellate court's standard of review is whether the trial court committed an abuse of discretion. *MarkWest Liberty Midstream & Res., LLC v. Clean Air Council*, 71 A.3d 337, 342 (Pa. Cmwlth. 2013). However, the application of the work product doctrine and attorney-client privilege are questions of law, over which the standard of review is *de novo* and the scope of review is plenary. *Bousamra v. Excela Health*, 210 A.3d 967, 973 (Pa. 2019).

5

This Court has held that discovery orders involving privileged materials may be immediately appealed. *MarkWest Liberty Midstream & Res., LLC v. Clean Air Council*, 71 A.3d 337, 342 (Pa. Cmwlth. 2013). In *MarkWest*, we ruled that the first prong of the appealability test is satisfied when the resolution of an issue concerning a trial court order can be achieved independently from an analysis of the merits of the underlying dispute. *Id.* In this case, it is possible to evaluate Appellant's claims of privilege without engaging in analyses of the underlying negligence claims against Appellant. The first prong is therefore satisfied.

The second prong of the appealability test is met if the issue implicates rights that are deeply rooted in public policy and impacts individuals other than those involved in the litigation of that case. *Id.* In *MarkWest*, we ruled that respondent corporation's claimed right to protect its trade secrets and confidential business information from discovery was sufficient for the importance standard. In this case, Appellant asserts that at least some of the information it seeks to shield from discovery is entitled to attorney-client privilege, which our Supreme Court has called "the most revered of our common-law privileges." *Commonwealth v. Maguigan*, 511 A.2d 1327, 1333 (Pa. 1986). The reasonable possibility that some or all of that information may be improperly stripped of its protection justifies our review before final judgment. *See Gocial v. Indep. Blue Cross*, 827 A.2d 1216, 1220 (Pa. Super. 2003) (holding that appellant's "colorable claim" of attorney-client privilege justified immediate appellate review).

Lastly, the third prong of the test is satisfied when, if immediate appellate review is not granted, the disclosure of documents could not be undone and subsequent review would be rendered moot. *MarkWest*, 71 A.3d at 342. In *MarkWest*, we ruled that compliance with the challenged discovery order could

result in the permanent disclosure of privileged information, thus requiring immediate appellate review. Here, full compliance with the trial court's order could result in the irrevocable disclosure of privileged communications between Appellant and its counsel. We therefore conclude that the order is an appealable collateral order under Pa. R.A.P. 313.

## 2. *Attorney-Client Privilege and the Work Product Doctrine*

Appellant argues that the disputed records should remain redacted since they are protected by attorney-client privilege and the work-product doctrine. Since the trial court did not provide explanations for which insurance claim notes should be redacted and which should not, this Court conducted its own in-camera review of the disputed records to determine what portions, if any, of the records are protected from discovery by attorney-client privilege or the work product doctrine.

Our legal system has for centuries conferred a privilege upon communications between attorneys and their clients in order "to foster open discussion" between them. *Pittsburgh Hist. & Landmarks Found. v. Ziegler*, 200 A.3d 58, 80 (Pa. 2019). The privilege serves important interests and is deeply rooted in the common law. *Twp. of Neshannock v. Kirila Contrs., Inc.*, 181 A.3d 467, 473 (Pa. Cmwlth. 2018) (citing *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 216 (Pa. 2014)). Like other statutory privileges, however, it is generally not favored because it operates in derogation of the search for truth. *Id.* Therefore, a party asserting the privilege carries the burden of showing that the materials in question meet a four-prong test:

> (1.)    The asserted holder of the privilege is a client or is sought as a client of the attorney involved in the communications. *Dages v. Carbon Cnty.*, 44 A.3d 89, 92 (Pa. Cmwlth 2012).

(2.) The communication was made by a member of the bar of a court or his or subordinate, or to such a person by a client. *See Dages*, 44 A.3d at 92-93 (explaining that the privilege now "operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice") (citing *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011)).

(3.) The communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter. *Dages*, 44 A.3d at 92.

(4.) The client has not waived the privileged claimed. *Id.*

To sustain its burden of proof, a party asserting the privilege must show, by record evidence such as affidavits, sufficient *facts* as to bring the communication at issue within the narrow confines of the privilege. *Twp. of Neshannock*, 181 A.3d at 474 (citing *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 688 (E.D. Pa. 1986)) (emphasis in original). In this case, there is no dispute that the first prong of the test is met since the insurance carrier is a client of Appellant's counsel. The fourth prong has also been met since there is no indication in the record that Appellant or its insurer has waived the attorney-client privilege.

To satisfy the second prong of the test, the party asserting the privilege must show that the communication was made between an attorney and the attorney's client. Here, Appellant alleges that the insurance adjuster's notes contain "verbatim communications or summaries of conversations" between counsel and the insurance carrier client. Appellant's Br. at 20. This is not the relevant standard, however. It is the notes themselves which must have been communicated between counsel and the insurance carrier, regardless of whether the notes incorporate details that were previously included in a privileged communication. *See Amtrak v. Fowler*, 788 A.2d 1053, 1064 (Pa. Cmwlth. 2001) (observing that attorney-client privilege "only

protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

Our examination of the unredacted disputed records reveal no evidence that the claim notes were intended to be, or functioned as, communications to Appellant's counsel, or anything other than the claims adjuster's synopses of the status of the claim and his discussions with the attorney. The heading at the top of each page merely refers to the text as "[n]otepads," and there are no designated recipients listed. While Appellant submitted a privilege log with entries corresponding to the claim notes, the one- and two-letter codes refer to entire entries rather than to specific redactions, and do almost nothing to enlighten this Court as to the intent or function of the claim notes.

The Superior Court of Pennsylvania has recently observed that "a privilege log provides an acceptable format in which to identify [allegedly privileged] documents, the applicable privilege, and the reason for the privilege claimed." *Fisher v. Nationwide Mut. Ins. Co.*, 258 A.3d 451, 461 n.8 (Pa. Super. 2021). In *Fisher*, the court ruled that a privilege log adequate for that purpose must "provide enough useful information . . . to enable the trial court to rule on the relevance of the items listed or explain why the privileges raised were applicable." *Id*. at 462. The party claiming attorney-client privilege in *Fisher* had presented a privilege log that "simply list[ed] numbers of documents, the subject of the document, and the privilege basis, all in cursory fashion." *Id.* In the absence of "useful" information, the claiming party "failed to meet its burden to assert facts establishing . . . an attorney-client privilege . . . with respect to any of the documents at issue." *Id.*

We find the reasoning of our sister court in *Fisher* persuasive. Like the asserting party in that case, Appellant here provides scant information to support its argument that the materials sought are protected by attorney-client privilege. We do not expect parties to furnish an exhaustive explanation of every redaction they make—a practice which, of course, would undermine the very purpose of privilege. Yet, we reiterate that in instances where the basis for privilege is not obvious, bald assertions are not enough; the asserting party must provide sufficient facts, through record evidence, such as affidavits, to meet its burden.

Under the third prong, the communication must have been made between client and counsel and it must also have been "confidential and made in connection with the providing of legal services or advice." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007). As explained above, Appellant has not met its burden of proof that the notes were communications between the insurer and counsel in the first place. We therefore conclude that Appellant cannot invoke attorney-client privilege for the disputed records.

Appellant also asserts that the trial court erred by only permitting five discrete redactions since those comments were protected from discovery by the work product rule, formalized in Pennsylvania as Rule of Civil Procedure 4003.3. While closely related to the attorney-client privilege, Rule 4003.3 is distinct from it in several ways, two of which are key in this case. First, it protects materials, not communications. Consequently, materials written by a client containing earlier remarks by an attorney may be protected work product even if no longer subject to attorney-client privilege. Secondly, the rule shields the work of even some non-attorneys from discovery:

> [D]iscovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes

or summaries, legal research or legal theories. *With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.*

Pa.R.Civ.P. 4003.3 (emphasis added). The rule does not specify who qualifies as a "representative," but its explanatory comments refer several times to the employees of a party's insurer as examples. *Id. See generally* Pa.R.Civ.P. 129(e) (explaining that a comment is not part of the rule but "may be used in construing the rule").

Similar to attorney-client privilege, the partial protection given to a non-attorney work product is to foster open discussion. *See Tate v. Phila. Sav. Fund Society*, 1 Pa. D. & C. 4th 131, 139 (1987) (observing that protecting from discovery a non-attorney representative's "speculation or conjecture . . . is important. Gossipy chitchat, especially between a ranking representative and counsel, often leads to an accurate assessment of the case . . . ."). Courts have therefore tended to interpret the rule as protecting "statements reflecting the value or merit of a claim or defense or a strategy or tactic that have virtually no evidentiary value." *Mueller v. Nationwide Mut. Ins. Co.*, 31 Pa. D. & C. 4th 23 (1996).

In this case, Appellees requested copies of the insurer's claim notes, but acknowledged that the opinions of insurance employees "as to the merit or value of the claim" could be omitted. R.R. at 62a. At the hearing before the trial court, Appellees' counsel explained: "if [the insurance adjuster] gives an opinion regarding the value of the claim, [Insurer] can redact that. If he says, here's my reserve, that's an opinion. [Insurer] can redact that and I have no problem." *Id.* at 79a.

After conducting our own in-camera review of the unredacted insurance claim documents, we conclude that the trial court correctly approved five of Appellant's redactions:

11

- The first, from an entry made on November 1, 2019, is prefaced with the clarification that it is a "[l]iability [a]nalysis." Second Supplemental Record at 6. The redacted text that follows appears indeed to be Mr. Coutant's opinion on the question of insured's liability—that is, on the value or merit of the claim. *Id.*

- The second, from an entry made on November 5, 2019, summarizes a discussion with Appellant's counsel in which Mr. Coutant shared an opinion concerning liability. *Id.* at 7.

- The third, from a long entry made on March 13, 2020, is a response to and summary of "[counsel for Appellant's] initial case evaluation." The redacted text consists of two paragraphs, plus three sentences in the following paragraphs, in which Mr. Coutant describes counsel's "mental impressions," "opinions," and "legal theories" regarding the litigation. This is clearly work product and not subject to discovery. *Id.* at 9.

- The fourth, from an entry made on March 17, 2020, recites Appellant's counsel's mental impressions and opinions of a motion filed by Appellees' counsel. *Id.* This, too, clearly constitutes work product.

- The fifth, from an entry made on May 5, 2020, records a remark by Appellant's counsel regarding legal strategy. *Id.* at 10. This, again, is work product and not discoverable.

Meanwhile, the text redacted by Appellant's counsel but ordered discoverable by the trial court (which constitutes roughly 70% of the total) falls generally into four categories.

First, most of the text (including but not limited to entries made on November 4 and 5, 2019; November 8, 2019, through March 13, 2020; and March 17 through May 5, 2020) consists of updates on mundane matters such as calendaring, the running of conflicts checks, and the sending and receiving of packages containing materials related to the case. Such information is not protected under Rule 4003.3.

Second, the notes (including those written on November 1, 2019, at 12:38 p.m., and part of the long entry made on March 13, 2020) contain summaries of Appellees' legal arguments and their underlying facts, such as bodily injuries. It should be obvious that Appellees, who are already aware of such facts, may discover those materials.

Third, a smaller category (including a single line from an entry made on October 21, 2019, and a paragraph from the March 13, 2020 entry) consists of statements made by employees of Monroeville Volunteer Fire Company #4. As the trial court emphasized at the August 25, 2020 hearing, and Appellant's counsel even conceded, statements by a party (rather than the party's attorney or non-attorney representative) are not protected from discovery.

Lastly, the notes (including entries made on November 1, 2019, at 8:23 a.m. and 1:05 p.m.) comprise information about the terms of insured's policy. Even when directly related to the litigation, such factual details do not comprise the insurer's opinions of the value or merit of a claim, and are therefore discoverable.

Our review leads us to conclude that the trial court amended the redactions with great precision and concern for the competing interests at stake. None of the

materials made discoverable under its October 13, 2020 Order are protected by either attorney-client privilege or Rule 4003.3. We therefore affirm the trial court's Order.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenyatta Mwambu, a minor, by his : 
parents and natural guardians, Paul : 
S. Mwambu and Josephine Kyazze : 
and Paul S. Mwambu and Josephine : 
Kyazze, in their own right : 
  : 
        v. : No. 1128 C.D. 2020
  : 
Monroeville Volunteer Fire Company : 
#4, : 
            Appellant : 

# **O R D E R**

AND NOW, this 14th day of March, 2022, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is AFFIRMED.

_____
ELLEN CEISLER, Judge