**John J. DOUGHERTY, Appellant**

v.

**Karen HELLER, Appellee.**

Superior Court of Pennsylvania.

Argued April 23, 2014.

Filed Aug. 14, 2014.

Joseph R. Podraza, Philadelphia, for appellant.

Amy B. Ginesky, Philadelphia, for appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., DONOHUE, J., ALLEN, J., LAZARUS, J., MUNDY, J., OLSON, J., and OTT, J.

OPINION BY BENDER, P.J.E.:

John J. Dougherty (Appellant) appeals from the order entered April 11, 2012, in which the trial court granted Karen Heller's (Appellee) motion to compel his videotaped deposition; denied Appellee's motion for costs and fees; and denied Appellant's cross-motion for a protective order regarding his videotaped deposition. We affirm.

Appellant is the business manager of the International Brotherhood of Electrical Workers Local 98. Both individually and as a representative of the union, he has been active in his community, engaging in numerous civic and philanthropic endeavors. He is a self-described public figure.

Appellee is a reporter and columnist. In November 2009, she authored an opinion column published in The Philadelphia Inquirer, which in part criticized Appellant's role in providing outdoor Christmas lights in Rittenhouse Square, a popular destination in Philadelphia.[1] Counsel for Appellant contacted Appellee, informed her that the column was inaccurate, and demanded a retraction and apology. Appellee complied with Appellant's demands, thereafter publishing a retraction and apology in The Philadelphia Inquirer.[2] Nevertheless, an uncorrected version of the original column remained available on Appellee's Facebook page for some brief period of time and on a third-party website for approximately two years.

Appellant commenced this action against Appellee in December 2009, claiming defamation. A videotaped deposition of Appellant was scheduled for March 2012. Upon appearance, a dispute arose as to the terms of his deposition. Appellant expressed concern that potentially embarrassing or inflammatory portions of a videotape could be disseminated to the media. In response, counsel for Appellee stated that she had no present intention to use the videotape for purposes other than the litigation and maintained that she would comply with the Pennsylvania Rules of Civil Procedure and Professional Conduct. Nevertheless, Appellant refused to submit to a deposition when counsel for Appellee declined an agreement not to disseminate the video to any third party absent court permission.

Thereafter, Appellee filed a motion to compel Appellant's videotaped deposition and a motion for costs and fees related to the previously scheduled deposition. Appellant filed a cross-motion for protective relief, requesting that the trial court either preclude Appellee from videotaping his deposition or, in the alternative, prohibit Appellee from using the videotape for any

---

1. Appellee opined:
 Consider the punitive nature of doing business in the city. Why does it cost $50,000 to string lights in Rittenhouse Square? Johnny Dougherty stepped in and magnanimously waived the exorbitant fees his electricians and the theatrical stage employees union imposed in the first place. Now he's Santa Doc. Next time, don't charge so much and create the crisis in [the] first place.
 Appellant's Second Amended Complaint, Exhibit A (the Article), at 2.

2. Appellee's retraction stated:

 For the record, I blew it in last Saturday's column, and owe John J. Dougherty an apology. I incorrectly stated that the electrical workers union and theatrical stage employees union imposed exorbitant fees for stringing holiday lights in Rittenhouse Square. That was wrong. Dougherty and his union generously donated their time and services to repair, replace, and hang the lights.
 Appellee's Motion to Compel, Exhibit D (the Retraction), at 1.

non-litigation purpose. Following argument, the trial court issued an interlocutory order, granting Appellee's motion to compel; denying the motion for costs and fees; and denying Appellant's motion for protective relief. Appellant timely appealed and filed a Pa.R.A.P. 1925(b) statement.[3]

On appeal, Appellant raises two interrelated issues, restated for ease of analysis: (1) whether the trial court failed to account for his protected privacy interest in the videotaped deposition; and (2) whether the court abused its discretion by disregarding evidence demonstrating good cause that a protective order prohibiting public dissemination of the videotape was necessary. *See* Appellant's Substituted Brief at 3.

▮▮▮ Preliminarily, we examine our jurisdiction to entertain this appeal.[4] "Generally, discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation." *Pilchesky v. Gatelli,* 12 A.3d 430, 435 (Pa.Super.2011) (quoting *Leber v. Stretton,* 928 A.2d 262, 265 (Pa.Super.2007)). However, "[a]n appeal may be taken as of right from a collateral order of … a lower court." Pa.R.A.P. 313(a); *see Pilchesky,* 12 A.3d at 437 (granting collateral review of the court-ordered disclosure of the identity of six John Doe defendants,

purportedly in violation of their First Amendment rights); *Rhodes v. USAA Cas. Ins. Co.,* 21 A.3d 1253, 1258 (Pa.Super.2011) (granting collateral review of a discovery order involving purportedly privileged material).

> A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). The Pennsylvania Supreme Court has admonished that the collateral order doctrine is narrow. *Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42, 46–47 (2003). All three factors must be present before an order may be considered collateral. *Id.* at 47; *Pilchesky,* 12 A.3d at 436; *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578, 583 (Pa.Super.2006).

In his first issue, Appellant asserts a "compelling privacy interest[ ] in preventing [his] pretrial[,] non-record testimony from being disseminated to the public." Appellant's Substituted Brief at 13. According to Appellant, this interest serves to protect from disclosure potentially embarrassing details of a litigant's personal

---

**3.** Appellant sought, but the trial court declined to issue a stay of proceedings, concluding that the order was not a collateral order appealable as of right. However, this Court entered a stay of proceedings pending the outcome of this appeal. *See* Order, 07/13/2012.

**4.** Appellant notes that a panel of this Court previously determined that the relevant order was a collateral order appealable as of right. According to Appellant, that determination is not at issue before the *en banc* Court. *See* Appellant's Substituted Brief at 6 n. 1. Appellant is incorrect. *See* Superior Court Order,

09/05/2013, at 1 (withdrawing the previous decision of this Court); *see also* Pa.Code § 65.41. Moreover, Appellee renews her objection to our exercise of appellate jurisdiction, contending that the order does not meet the requirements of the collateral order doctrine. *See, infra.* Finally, subject matter jurisdiction is always at issue, and we may raise it *sua sponte. Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. Of Prob. & Parole),* 580 Pa. 174, 860 A.2d 25, 29 (2004); *In re Miscin,* 885 A.2d 558, 561 (Pa.Super.2005).

life. This Court has previously granted collateral review of pretrial discovery orders in which an appellant's privacy interests were at issue. *See, e.g., J.S. v. Whetzel,* 860 A.2d 1112, 1117 (Pa.Super.2004) (concluding that an expert witness's privacy interest in his income was suitable for collateral review); *Commonwealth v. Alston,* 864 A.2d 539, 546 (Pa.Super.2004) (granting collateral review to address privacy interests relevant to a pretrial court-ordered psychiatric evaluation).

In urging us to reject collateral review of this issue, Appellee argues that Appellant's assertion fails to meet any of the requirements of the collateral review doctrine. According to Appellee, it is impossible to review the trial court's decision without addressing the merits of Appellant's defamation claim. In particular, Appellee suggests that Appellant relies merely on his allegations of defamation and purported animus in support of his motion for the protective order, and this reliance impermissibly intertwines this discovery dispute with the underlying claim. Moreover, according to Appellee, the importance of this issue is limited to Appellant alone. Finally, Appellee suggests that subsequent review of this issue, though perhaps inconvenient, will nonetheless be possible. We are not persuaded by Appellee's arguments and conclude that this issue is suitable for collateral review.

Appellant's assertion of a privacy interest in pretrial discovery is clearly separable from his defamation claim, as we need not examine whether a harmful, defamatory statement was made. *See Pilchesky,* 12 A.3d at 437 (concluding that a discovery dispute entailed consideration of threshold requirements relevant to protecting First Amendment rights of John Doe defendants and that such consideration was separate from the underlying defamation action).[5]

■ In assessing importance, we "look[ ] for rights deeply rooted in public policy going beyond the litigation at hand ... and measure[ ] any such interests against the public policy interests advanced by adherence to the final judgment rule." *Pridgen v. Parker Hannifin Corp.,* 588 Pa. 405, 905 A.2d 422, 431 (2006) (citing *Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209, 1214 (1999); *Melvin,* 836 A.2d at 47; and *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547, 552 (1999)).

■■ "[T]he right of privacy is a well-settled part of the jurisprudential tradition in this Commonwealth[.]" *Stenger v. Lehigh Valley Hosp. Ctr.,* 530 Pa. 426, 609 A.2d 796, 800 (1992) (*Stenger II* ) (reflecting on the Court's obligation "to avoid unjustified intrusions into the private zone of our citizens' lives"). In other contexts, we have found privacy interests sufficiently important to warrant collateral review of a discovery ruling. *J.S.,* 860 A.2d at 1117; *Alston,* 864 A.2d at 546. Clearly, Appellant's assertion implicates fundamental questions related to the nature of pretrial discovery. In light of the robust protections afforded privacy interests in

---

**5.** To the extent Appellant sought protective relief by alleging Appellee's animus toward him, we observe that the Pennsylvania Supreme Court has adopted a practical analysis of the separability element, "recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable."

*Pridgen v. Parker Hannifin Corp.,* 588 Pa. 405, 905 A.2d 422, 433 (2006). Further, the probative value of any personal hostility Appellee may hold toward Appellant is unclear relative to the underlying defamation claim. *See Harte–Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 666, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

Pennsylvania, we conclude that the right to privacy in pretrial discovery "falls within the class of rights that are too important to be denied review." *Melvin*, 836 A.2d at 50.

■ Finally, any protectable privacy interest Appellant may have in pretrial discovery would be irreparably lost absent collateral review. *J.S.*, 860 A.2d at 1117 (concluding that an appellant's privacy interest would be "irreparably violated" absent collateral review); *Alston*, 864 A.2d at 546 (similarly concluding that an appellant's privacy claim would "be lost forever"). The nature of a litigant's privacy interest is similar to a defamation defendant's First Amendment right to anonymity, or a litigant's property interest in a trade secret. *See Pilchesky*, 12 A.3d at 437; *Crum*, 907 A.2d at 584. In each case, an appellant seeks to keep private or secret what may otherwise become public, and in each case, the loss of privacy or secrecy would be irreparable.

■ "Our jurisdictional analysis has focused, thus far, upon Appellant's first issue. In his second issue, Appellant contends the court erred by disregarding evidence demonstrating good cause. In our view, a strong argument exists that Appellant's second issue, which merely questions the trial court's application of the good cause standard, raises factual considerations not well-suited to collateral review. The Supreme Court has adopted an issue-by-issue approach and restricted collateral appeals to those issues which independently satisfy the collateral order test." *Pilchesky*, 12 A.3d at 436 (citing *Rae v. Pa. Funeral Dirs. Ass'n*, 602 Pa. 65, 977 A.2d 1121, 1129 (2009)); *see also Pridgen*, 905 A.2d at 432 n. 9 (distinguishing legal from factual controversies and declining collateral review of the latter); *Stewart v. Precision Airmotive, LLC*, 7 A.3d 266 (Pa.Super.2010) (rejecting nine of ten issues for which appellants sought collateral review). However, a litigant's privacy interest in discovery and the risk of an unreasonable intrusion should those interests not be sufficiently protected by the good cause standard are inextricably linked. Accordingly, we conclude that collateral review of both of Appellant's issues is appropriate.

We examine the merits of this appeal pursuant to the following standard of review:

> Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard. [Nevertheless,] [o]ur caselaw long has held that questions of law are accorded full appellate review, and our consideration is plenary.

*McNeil v. Jordan*, 586 Pa. 413, 894 A.2d 1260, 1268 (2006) (citations omitted); *see also Crum*, 907 A.2d at 585; *George v. Schirra*, 814 A.2d 202, 204 (Pa.Super.2002).

Appellant asserts that he retains a compelling privacy interest in non-record, pretrial discovery. According to Appellant, the relative ease with which a videotaped deposition can be modified, and thereafter disseminated to the public in a manner harmful to a litigant, increases the risk that the discovery process will be abused. This increased risk of abuse warrants protection to insure a litigant's privacy interest is not damaged irrevocably. Thus, based upon his asserted right of privacy, Appellant claims that the trial court erred in declining his motion for a protective order. No relief is due.

Appellant does not identify expressly for the Court the origin of this privacy inter-

est; he does not define its nature or limits; and he fails to suggest a meaningful way of examining any potential intrusion upon it. *See, e.g., Stenger II,* 609 A.2d at 800–03 (comparing the right of privacy as evaluated pursuant to both the United States Constitution and the Pennsylvania Constitution; citing numerous cases). Nevertheless, he implies a constitutionally protected right under the First Amendment,[6] primarily citing in support the following cases: *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (*Seattle Times*); *Stenger v. Lehigh Valley Hosp. Ctr.,* 382 Pa.Super. 75, 554 A.2d 954 (1989) (*Stenger I*); *MarkWest Liberty Midstream & Ress., LLC v. Clean Air Council,* 71 A.3d 337 (Pa.Cmwlth.2013) (*MarkWest*). These cases are inapposite.

In *Seattle Times,* the spiritual leader of a religious group brought claims of defamation and invasion of privacy on behalf of himself and the group (collectively, Rhinehart) against media defendants, following the publication of a series of newspaper articles focused on the group. *Seattle Times,* 467 U.S. at 22–23, 104 S.Ct. 2199. During discovery, the media defendants requested information related to the financial affairs of the group. *Id.* at 24, 104 S.Ct. 2199. Rhinehart refused to provide certain information, including the identity of the group's financial backers and a list of members. *Id.* The media defendants filed a motion to compel, and Rhinehart sought a protective order. *Id.* at 25–26, 104 S.Ct. 2199. Initially, the trial court granted the motion to compel and denied the motion for protective order, but it did

so without prejudice to Rhinehart's right to establish "a factual showing of good cause for restraining defendants in their use of those materials." *Id.* at 26, 104 S.Ct. 2199. After considering several affidavits submitted by Rhinehart detailing threats of violence against the group's membership, the trial court granted a protective order, and the media defendants appealed. *Id.* at 27–28, 104 S.Ct. 2199.

The *Seattle Times* Court granted *certiorari* of the following issue: "whether parties to civil litigation have a First Amendment *right to disseminate,* in advance of trial, information gained through the pretrial discovery process." *Id.* at 22, 104 S.Ct. 2199 (emphasis added). In rejecting the media defendants' argument that any restraint on their right to disseminate freely demanded strict scrutiny, the Court observed that litigants have no First Amendment right of access to information gained through the discovery process and that pretrial proceedings are generally conducted in private. *Id.* at 32–34, 104 S.Ct. 2199. Therefore, applying intermediate scrutiny to the trial court's decision, the Court recognized substantial governmental interests in protecting the integrity of the discovery process and concluded that where "a protective order is entered on a showing of good cause[,] is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37, 104 S.Ct. 2199.

Our review of *Seattle Times* reveals that Appellant's reliance upon it is misplaced.

---

**6.** In Appellant's initial brief, submitted for the benefit of a previous panel of this Court, Appellant invoked the First Amendment expressly. *See* Appellant's Brief at 11 (asserting that the trial court ran "roughshod over [his] constitutionally protected right under the First Amendment against the public disclosure of discovery not yet admitted into the judicial record"). Appellant's substituted brief submitted to the *en banc* Court relies on the same precedent to establish his purported privacy right in pretrial discovery.

The Court recognized that "liberal discovery," provided to facilitate litigation, "may seriously implicate privacy interests." *Id.* at 34, 104 S.Ct. 2199. However, notably absent from the Court's analysis was any recognition of a party's constitutional right to keep private information provided through discovery. *Id.* To be clear, *Seattle Times* affords Appellant no meaningful protection, absent a showing of good cause. *Id.* at 37, 104 S.Ct. 2199.

In *Stenger I*, this Court addressed a third party intervener's constitutional right of access to information exchanged between litigants in discovery. *See Stenger I*, 554 A.2d at 957. It did not analyze a litigant's purported constitutional right of privacy. *Id.* In that case, the plaintiff and her family sued a hospital when she was transfused with units of blood allegedly contaminated with the AIDS virus. *Id.* at 955. Upon agreement of counsel, the trial court issued a protective order preventing public dissemination of pretrial discovery. *Id.* A local newspaper petitioned to intervene and filed exceptions to the protective order, which were denied. *Id.* at 955–56. On appeal, relying on *Seattle Times*, this Court affirmed, concluding that a protective order could issue upon a showing of good cause. *Id.* at 960.

In *MarkWest*, the Commonwealth Court addressed the appropriate standard by which a trial court should evaluate a motion for a protective order related to trade secrets or confidential business information. *See MarkWest*, 71 A.3d at 343–44. The court declined to rule on a second issue related to the "use, disclosure, and retention of . . . documents produced during discovery." *Id.* at 345. Nevertheless, in a footnote supplementing its declination, the court suggested that "a litigant has no right to disseminate private documents gained through the discovery process." *Id.* at 345 n. 15 (citing *Seattle Times*, 467 U.S. at 32–34, 104 S.Ct. 2199). As is clearly evident from our review of *Seattle Times*, this brief statement, offered without analysis or context, does not accurately reflect the opinion of the United States Supreme Court. Thus, we afford *MarkWest* no persuasive authority.

Finally, though we will not address every case cited by Appellant, we will note that Appellant's reliance upon *Baker v. Buffenbarger*, 2004 WL 2124787 (N.D.Ill. 2004), is also misplaced. In that case, local union members sued international union leadership. *Id.* at *1. The defendants sought a protective order when the plaintiffs threatened to send copies of videotaped depositions to the media and to post excerpts on plaintiffs' website devoted to criticizing the defendants. *Id.* Contrary to Appellant's representations to this Court regarding the exclusively private nature of pretrial discovery, the federal district court in *Baker* observed:

> "As a general proposition, pretrial discovery must take place in . . . public unless compelling reasons exist for denying the public access to the proceedings." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).[7] "Absent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit." *Id.*

*Id.* at *2; *but see cf. Seattle Times*, 467 U.S. at 32–34, 104 S.Ct. 2199. Thereafter,

---

**7.** *Jepson* cites in support: *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir.1984), *cert. denied*, 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 652 (1985); *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

based upon affidavits submitted to the court, detailing plaintiffs' intentions to embarrass defendants, including an attempt to influence an impending national union election, and based upon plaintiffs' refusal to disavow their intentions, the court found good cause to issue a protective order. *Id.* at *3.

 Generally, the analytical focus of the cases relied upon by Appellant is a trial court's authority to restrict a litigant or third party's rights of access and speech, rather than upon the court's obligation to protect a litigant's privacy interests. Moreover, these cases do not recognize a "compelling privacy interest" of any origin, certainly not one of constitutional strength, and we are aware of no authority suggesting a litigant's privacy interest in discovery warrants protection, absolute or independent of other relevant interests. Rather, the decision whether a litigant's privacy interest is afforded protection rests upon a showing of good cause. In our view, the "good cause" standard strikes an appropriate balance between competing interests, including a litigant's privacy interests (however they may be defined), the First Amendment freedoms of speech and access, and the court's obligations to administer justice efficiently and prevent abuse of the discovery process. Accordingly, we deem Appellant's first issue to be without merit.

In his second issue, Appellant contends that the trial court abused its discretion by disregarding evidence demonstrating good cause. As in his first issue, Appellant offers little depth of analysis: he does not define good cause nor suggest an appropri-

ate standard by which to evaluate it. Appellant does not even set forth the relevant text of the procedural rule that governs his motion. We caution Appellant that failure to develop a legal argument risks waiver. *See McEwing v. Lititz Mut. Ins. Co.,* 77 A.3d 639, 647 (Pa.Super.2013) (quoting *Umbelina v. Adams,* 34 A.3d 151, 161 (Pa.Super.2011)); Pa.R.A.P. 2119(a). Moreover, Appellant offers no factual evidence in support of his contention, with two exceptions: (1) Appellant references several statements of counsel made at the aborted deposition and later during argument before the trial court, suggesting counsel's predisposition to disseminate Appellant's deposition, and (2) those facts alleged in support of his defamation claim, including an assertion that Appellee harbors animus toward him.[8]

The trial court concluded that Appellant failed to establish good cause pursuant to Pennsylvania Rule of Civil Procedure 4012(a)(3). The rule provides:

> Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:
>
> . . .
>
> (3) that the discovery or deposition shall be only by a method of discovery or deposition other than that selected by the party seeking discovery or deposition[.]

---

8. Appellant's allegations of ill-will directed toward him by third parties to this action are not relevant. As for Appellant's suggestion that opposing counsel *may* violate the Rules of Professional Conduct, we consider it inappropriate and needlessly inflammatory, particularly absent any evidence to support the suggestion.

Pa.R.C.P. 4012(a)(3).[9]

No Pennsylvania appellate court has addressed what constitutes "good cause" in this context. *But see Seattle Times,* 467 U.S. at 26, 104 S.Ct. 2199 (referencing the state court's requirement of a factual showing of good cause); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."); *Constand v. Cosby,* 229 F.R.D. 472, 479 (E.D.Pa.2005) (applying the *Pansy* standard); *Ornsteen v. Bass,* 50 Pa. D. & C.3d 371, 374–75 (Phila.Cty.1988) ("The law is clear that the determination of whether good cause does or does not exist must be based upon appropriate testimony and other factual data, not the unsupported contentions and conclusions of counsel.") (quotation omitted).

▬ In light of the deference with which we review a trial court's decision whether to issue a protective order, we decline to adopt any specific requirements to establish good cause. We have previously observed that "[t]he questions of whether disclosure is to be allowed, if protection is to be afforded, and the form of such protection, are matters to be determined according to the discretion of the court." *Crum,* 907 A.2d at 586. Further, the *Seattle Times* Court approved of the broad discretion afforded trial courts by the rules:

[S]uch discretion is necessary[.] ... The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Seattle Times,* 467 U.S. at 36, 104 S.Ct. 2199.

▬ Though we need not impose a rigid standard of analysis, it is self-evident that a party seeking a protective order must, at the very least, present some evidence of substance that supports a finding that protection is necessary. Such evidence must address the harm risked, and not merely an unsubstantiated risk of dissemination, as suggested by Appellant here.

In *Seattle Times,* for example, good cause was based upon several affidavits. *Id.* at 26, 104 S.Ct. 2199. "The affidavits detailed a series of letters and telephone calls ... including several that threatened physical harm[.] The affiants also described incidents ... involving attacks, threats, and assaults directed at [group] members by anonymous individuals and groups." *Id.* In *Stenger I,* the discovered information contained "intimate, personal details of the [plaintiffs'] lives[, including] information about their sexual practices, their idiosyncrasies, and their personal hygiene habits." *Stenger I,* 554 A.2d at 959.

Appellant offered nothing of comparable substance. Accordingly, we discern no abuse of the trial court's discretion.

Order affirmed.

---

**9.** Rule 4012 is similar to Federal Rule of Civil Procedure 26(c) and Washington Superior Court Civil Rule 26(c), considered by the *Seattle Times* Court. However, the Pennsylvania rule qualifies the harms to be avoided with an additional term, "unreasonable." Neither party addresses this distinction, and we need not explore it here.

President Judge GANTMAN and Judges DONOHUE, ALLEN, OLSON and OTT join in this decision. Judge LAZARUS concurs in the result.

Judge MUNDY files a concurring and dissenting opinion in which President Judge Emeritus FORD ELLIOTT joins.

## CONCURRING AND DISSENTING OPINION BY MUNDY, J.

I join the Majority insofar that it decides the order at issue is appealable pursuant to the collateral order doctrine. However, I disagree with the Majority's conclusion that Appellant failed to establish good cause for protective relief pursuant to Pennsylvania Rule of Civil Procedure 4012. After thoroughly reviewing the certified record, I believe that good cause exists for the minimal protection requested by Appellant, to wit, restricting the pretrial use of his videotaped deposition to litigation purposes. In my view, the trial court abused its discretion when ordering the videotaped deposition of Appellant to occur without entering an order limiting its pretrial use. As I believe such protection is warranted in this case, I respectfully dissent.

The Majority sets forth that we apply an abuse of discretion standard when reviewing discovery orders. Majority Opinion at 1263, *citing McNeil v. Jordan*, 586 Pa. 413, 894 A.2d 1260, 1268 (2006); *accord Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, —— Pa. ——, 91 A.3d 680, 686 (2014) (opinion in support of affirmance) ("within the ambit of the discretionary authority allocated by the rules to the trial courts, we review for abuse of discretion[ ]" (citation omitted)). "An abuse of discretion exists when the [trial] court has reached a conclusion which overrides or misapplies the law, or when the

judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Middletown Twp. v. Lands of Stone*, 595 Pa. 607, 939 A.2d 331, 335 n. 3 (2007). Our scope of review is plenary. *Id.* Thus, we may review the entire record when reaching our decision. *Id.*

Generally, the Pennsylvania Rules of Civil Procedure allow for liberal discovery. *See* Pa.R.C.P. 4003.1 (providing that, subject to a few exceptions, a party may obtain discovery regarding any relevant, nonprivileged matter). As the scope of discoverable information is broad, "there is a resultant potential for abuse in the discovery process." *Stenger v. Lehigh Valley Hosp. Ctr.*, 382 Pa.Super. 75, 554 A.2d 954, 960 (1989). As a result of this feasible gamesmanship, the Rules prohibit discovery which "is sought in bad faith ... [or] would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party." Pa.R.C.P. 4011. A party seeking such protection may move for a protective order pursuant to Rule 4012. A court may issue a protective order for "good cause[.]" Pa.R.C.P. 4012. If the trial court concludes that the party seeking a protective order has met this burden, "the court may make any [protective] order which justice requires to protect a party[.]" Pa.R.C.P. 4012(a).

As oft used as the term "good cause" is when discussing protective orders, the phrase is not well defined under Pennsylvania law. *See* Majority Opinion at 1267. Thus, we have routinely concluded that "[t]here are no hard-and-fast rules as to how a motion for a protective order is to be determined by the court." *Hutchison v. Luddy*, 414 Pa.Super. 138, 606 A.2d 905, 908 (1992), *quoting Allegheny W. Civic*

*Council, Inc. v. City Council of the City of Pittsburgh*, 86 Pa.Cmwlth. 308, 484 A.2d 863, 866 (1984).

Yet, the United States Court of Appeals for the Third Circuit has opined upon the meaning of "good cause" within Federal Rule of Civil Procedure 26(c).[1] *See* Majority Opinion at 1267, *citing Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–787 (3d Cir.1994). That Court delineated the following seven factors for its district courts to balance when determining if good cause exists for a Rule 26(c) protective order.

> 1) [W]hether disclosure will violate any privacy interests;

> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;

> 3) whether disclosure of the information will cause a party embarrassment;

> 4) whether confidentiality is being sought over information important to public health and safety;

> 5) whether the sharing of information among litigants will promote fairness and efficiency;

> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and

> 7) whether the case involves issues important to the public.

*Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir.2005), *citing Pansy, supra* at 787–791.

Although federal opinions are not binding upon this Court, they may provide persuasive authority. *See Commonwealth v. Dunnavant*, 63 A.3d 1252, 1255 n. 2 (Pa.Super.2013), *appeal granted*, 621 Pa. 18, 73 A.3d 524 (2013).

This matter appears before us because Appellee refused to agree that she would not publically disseminate Appellant's videotaped deposition prior to its introduction at trial. Appellant's Brief at 9. When a party's deposition is sought during pre-trial discovery, Pennsylvania Rule of Civil Procedure 4017 permits the taking of such deposition "as a video deposition by means of simultaneous audio and visual electronic recording." Pa.R.C.P. 4017.1(a). Thus, Appellee possesses the unfettered right to take Appellant's videotaped deposition but for a Rule 4012 protective order.

Within his motion for protective order, Appellant requested relief in one of two ways.[2] *See* Appellant's Cross–Motion for Protective Relief, 3/22/12, at 1. Appellant requested the court to preclude Appellee from **either** videotaping his deposition **or** disseminating his videotaped deposition for non-litigation use prior to trial. *Id.* Appellant argues that he is entitled to an order protecting his videotaped deposition from pretrial dissemination for the following reasons: (1) Appellant's status as a self-designated public figure; (2) the parties' litigious and acrimonious relationship; (3) the nature of the underlying litigation, *i.e.*,

---

1. Pa.R.C.P. 4012 is similar to F.R.C.P. 26(c) but for Pennsylvania's addition of the word "unreasonable" to describe the "annoyance, embarrassment, oppression, undue burden or expense" that the discovery would cause a party or deponent. *See* Majority Opinion at 1267 n. 9, *citing* Pa.R.C.P. 4012; F.R.C.P. 26(c). When comparing the language of the federal and state rules, Rule 4012 envisions a broader view of prohibited conduct.

2. I note that the authority Appellee cites to support her claim that Appellant waived this issue by failing to object to the videotaped deposition prior to the date and time noticed is non-precedential. *See Dunnavant, supra* (regarding federal court opinions); *Petow v. Warehime*, 996 A.2d 1083, 1088 n. 1 (Pa.Super.2010) (regarding Commonwealth Court decisions), *appeal denied*, 608 Pa. 648, 12 A.3d 371 (2010).

defamation; (4) an ulterior motive of Appellee to gain access to his videotaped statements; and (5) the susceptibility of videotaped depositions to editing and manipulation in light of Appellee's ability to easily broadcast such a recording. *Id.* at 7–9. Appellant asserts these allegations amount to good cause for Rule 4012 protective relief. *See generally id.*

Within its opinion, the Majority concludes that Appellant "offers no factual evidence in support of his contention[ that good cause exists for a protective order], [but for] two exceptions[.]" Majority Opinion at 1266. The Majority concedes "(1) Appellant references several statements of counsel made at the aborted deposition and later during argument before the trial court, suggesting counsel's predisposition to disseminate Appellant's deposition, and (2) [Appellant cites] those facts alleged in support of his defamation claim, including an assertion that Appellee harbors animus towards him." *Id.* at 1266.

Initially, I believe the Majority's contention that Appellant presents only two pieces of evidence to support his good cause claim belies the certified record. Nevertheless, I believe these two assertions themselves establish good cause to support the requested minimally restrictive protective order as both of these assertions allow for an inference that Appellee sought his videotaped deposition for an improper purpose. *See Shingara, supra.*

Herein, Appellant and his counsel appeared at the date and time scheduled for his videotaped deposition. Deposition, 3/16/12, at 2; Appellee's Motion to Compel, 3/19/12, Exhibit G. While the parties were making preliminary statements on the record, the following exchange occurred between the parties.

[Appellant's counsel]: Since this is being videotaped, we have some concerns since it involves the media that perhaps this could go beyond use for court filings or court proceedings.

We're perfectly fine [proceeding with the videotaped deposition] with the understanding that it's going to be used just for that purpose, but we are not comfortable if it goes to a third party, any portions of this videotape. And we'd like assurances that that will not be the case.

. . .

I'm not trying to handcuff your use. We[ ] just want[ ] to make sure that we're not going to be watching the news and all of a sudden a clip of today's deposition appears and [is used] for purposes outside of this litigation. And that's all we want assurances, that that's not going to be the case.

[Appellee's counsel]: That's not the intent, yes.

[Appellant's counsel]: Well I want assurances that that's not going to be the case.

[Appellee's counsel]: **I am not going to give you an assurance that that's not going to be the case.** That's not the intent. I plan on using this in connection with the litigation. I have never not used a transcript and a video deposition not in connection with litigation.

. . .

[Appellant's co-counsel]: Well, no, no [counsel], we want to make, so it's very clear, we want [an] agreement that this will be used by you just for litigation. You're not going to turn it over to like the news media, television for anything like that. That's all we want.

[Appellee's counsel]: . . . I never had an intent of doing that, and I'm not planning on doing it . . . .

[Appellant's co-counsel]: We want [an] agreement that you won't do it.

[Appellee's counsel]: Well, I don't think that I'm obligated not to and I don't want to be put to agreeing to that—

[Appellant's co-counsel]: You're obligated if we're having this televised that you're not using it for other purposes in the litigation and you're not going to turn it over to television stations or the media in general just to broadcast it. You are obligated to do that.

[Appellee's counsel]: I am obligated by whatever my obligations are under the rules.

[Appellant's counsel]: See, this is a problem for us, [counsel], because ... we need to assess that any more damage than already has been done, from our vantage point, is not going to occur. Now, we recognize you have a right to do a videotaped deposition, and we're not disputing that.

[Appellant's co-counsel]: For purposes of litigation.

[Appellant's counsel]: That's exactly right.

And we need to know that assurance because then we have to assess whether perhaps there's a need to have a [trial c]ourt step in and decide that the videotape option that you otherwise would be entitled to is not going to occur without that assurance.

You certainly would help us put that issue aside if you will right now represent to us that besides this litigation, the videotape will not be used for any other purpose or released to any other third parties outside of relationship with any filing in this case or court proceeding.

I think it's a simple request. And as [counsel] said, it's really the professional responsibility and duty you owe.

. . .

[Appellee's counsel]: ... I don't have the authority. All I have the authority to say to you is I abide by the rules, and I will abide by the rules. And if the ethical rules put constraints on what lawyers can do with materials in discovery, I abide by those rules.

[Appellant's co-counsel]: Well, [counsel], we're not going to go ahead with ... videotaping [this deposition] if you are not in a position to tell us that you will not turn it over to the media to have it broadcast[ed].

. . .

[Appellee's counsel]: I'm not saying that I am going to give it to some TV station to just broadcast. **But I don't know who might ask it of me,** I don't know— I certainly am not calling up anybody and asking them to take this videotape.

But I am not in the position to assure you that under all circumstances I would not provide the videotape to someone else if it seemed appropriate.

. . .

[Appellant's counsel]: [ ] I think it's significant to [Appellant], given his history, that we have a very, very solid agreement as to how we're going to handle this tape. Because, you know, you are the media and we're here because of what we contend to be malicious conduct by the media of a public figure.

And we think that without giving us this assurance, it raises a great deal of doubt of what the intentions are here.

. . .

[Appellant's counsel]: [A]ll we want[ ] [are] assurances that if somebody on the outside requested the tape or if you

were inclined to think of releasing it that we would get advance notice so we could then have a [trial c]ourt decide whether that's appropriate or not.

The fact that we can't have that basic agreement again raises strong flags in our mind. We are not going to go forward with the videotaping. You can choose to go forward with just having the transcript.

Otherwise, we're going to seek the protective relief and we'll let the [trial c]ourt decide how we're going to proceed with the videotaped portion of this.

. . .

*Id.* at 4–9, 11–12, 17–18, 23–24, 32–33 (emphases added).

Upon reviewing the aforementioned exchange, I agree with Appellant's concern about whether Appellee was seeking Appellant's **videotaped** deposition for a legitimate purpose. *See Shingara, supra.* I believe the only proper pretrial use of a videotaped deposition is within the scope of the underlying litigation. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *Stenger, supra* at 960–961; *MarkWest Liberty Midstream & Res., LLC v. Clean Air Council,* 71 A.3d 337, 345 n. 15 (Pa. Cmwlth.2013). Appellee's adamant refusal to limit the dissemination of this deposition for such purpose has the potential to inflict upon Appellant further "unreasonable annoyance, embarrassment, oppression, burden or expense[.]" Pa.R.C.P. 4012. Additionally, Appellant's assertion that "of the [17] depositions that have been noticed[ in this case to date], only [his] was sought to be done by videotape[ ]" further bolsters my concern. Appellant's Brief at 8. Therefore, I believe the trial court abused its discretion when it refused to grant Appel-

lant a Rule 4012 protective order on this ground.

Appellant also argues that "there exists a long history of defamation litigation between [himself], [Appellee]'s employer, and other media entities." *Id.* at 7, *referencing Dougherty v. Phila. Newspapers, LLC,* No. 004224 (Phila.Cty. July 2009); *Dougherty v. Phila. Newspapers, LLC,* No. 003325 (Phila.Cty. June 2009); *Dougherty v. Metro. Corp.,* No. 003325 (Phila.Cty. June 2009); *Dougherty v. Phila. Newspapers, LLC,* No. 004790 (Phila.Cty. Mar. 2009); *see also* Appellant's Cross–Motion for Protective Relief, 3/22/12, Exhibit A. Appellant claims that "[Appellee]'s and her media-employer's dislike of [him] was acknowledged at depositions taken in this case." Appellant's Brief at 7. Specifically, Appellant testified that, when Appellee worked at The Philadelphia Inquirer and the Philadelphia Daily News, articles were published over many years that "critical[ly] depict[ed]" union labor within Philadelphia. Deposition, 3/7/12, at 107, 109; Appellant's Cross–Motion for Protective Relief, 3/22/12, Exhibit B. Additionally, Signe Wilkinson (Wilkinson), a friend of Appellee and an employee-cartoonist at The Philadelphia Daily News, was deposed regarding her published work that was unfavorable to Appellant. Deposition, 3/2/12, at 31–37; Appellant's Cross–Motion for Protective Relief, 3/22/12, Exhibit C. Specifically, Wilkinson admitted to drawing an image of a very large Appellant leading several very small city council people around on a leash following a Philadelphia city council election in the fall of 2011. *Id.* at 31. Also, in the mid–1990s, when beheadings were occurring in Iraq and the Pennsylvania Convention Center was being built, Wilkinson sketched Appellant with a large sword in reference to the Convention Center project. *Id.* at 35–37.

Although Appellee claims the number of suits between Appellant and her employer illustrate that Appellant is merely a "serial litigant[,]" I agree with Appellant that these filings support his allegation of discord between the parties. Appellee's Brief at 26. Notably, the trial court also acknowledged that "th[is] alleged acrimonious relationship as outlined by [Appellant] [ ] establishes the basis of his concerns[ regarding pretrial dissemination.]" Trial Court Opinion, 6/21/12, at 5 (when concluding the order failed the importance prong of the tripartite collateral order test). Likewise, the Majority acknowledges that "an uncorrected version of the original column[, *i.e.,* the basis for the underlying action,] remained available on Appellee's Facebook page for some brief period of time and on a third-party website for approximately two years[ ]" despite Appellee's formal recognition of the errors contained in such article and her subsequent retraction. Majority Opinion at 1260. In light of the foregoing, the depositions of Appellee and her friend and coworker further illustrate the animus between the parties and its potential to cause further "unreasonable annoyance, embarrassment, oppression, burden or expense[ ]" to Appellant. Pa.R.C.P. 4012. Accordingly, I believe the trial court abused its discretion when it failed to grant a minimally intrusive protective order based upon the parties contentious relationship.

Additionally, I believe the trial court overlooked a significant reality within its good cause analysis, to wit, the nature of the underlying allegation. As this matter now stands, Appellant alleges Appellee made defamatory statements against him within an article published in The Philadelphia Inquirer, which was further dispersed through her two Facebook pages. Appellant's Second Amended Complaint, 11/3/10, at 7–11. Generally, "[d]efamation is a communication which tends to harm an individual's reputation so as to lower him [ ] in the estimation of the community or deter third persons from associating or dealing with him [ ]." *Joseph v. Scranton Times, L.P.,* 89 A.3d 251, 260 (Pa.Super.2014) (citation omitted); *see also* 42 Pa.C.S.A. § 8343 (outlining the burdens of proof in a defamation claim). The form of the underlying action raises concerns that the action itself could cause the litigant "unreasonable annoyance, embarrassment, oppression, burden or expense[.]" Pa. R.C.P. 4012. Consequently, Appellant requested an assurance from Appellee that she would not disseminate his videotaped deposition before its introduction at trial, to diffuse his fears regarding Appellee's motive behind this discovery method. Deposition, 3/16/12, at 4–5; Appellee's Motion to Compel, 3/19/12, Exhibit G. Notably, Appellant did not request to ban the post-trial dissemination of the deposition; he merely sought to prohibit the pretrial distribution of it. *Id.* In my mind, the form of the underlying action, coupled with Appellee's predisposition to disseminate Appellant's deposition for non-litigation purposes and the parties' cantankerous relationship, necessitates a minimally intrusive Rule 4012 protective order. This order would protect Appellant from any future "unreasonable annoyance, embarrassment, oppression, burden or expense" that palpably could occur within his defamation action. Pa.R.C.P. 4012. Thus, I believe the trial court abused its discretion when it denied such relief.

I note the Majority opines that "it is self-evident that a party seeking a protective order must, at the very least, present some evidence of substance that supports a finding that protection is necessary[ ]" and that "[s]uch evidence must address the

harm risked, and not merely an unsubstantiated risk of dissemination[.]" Majority Opinion at 1267. Presently, the Majority concludes that Appellant did not present a substantiated risk of dissemination. *Id.* I cannot agree.

Herein, the record illustrates that long-feuding parties are involved in a defamation action regarding Appellant's philanthropic actions within Philadelphia. Assuming *arguendo,* that the pretrial dissemination of Appellant's deposition would not violate any privacy interests, Appellant has illustrated that he is a public figure who has brought an action against a reporter of a large media entity who allegedly harmed his reputation within the community. *See Joseph, supra.* This case commands a minimally-restrictive protective order to further protect Appellant from "unreasonable annoyance, embarrassment, oppression, burden or expense[.]" Pa.R.C.P. 4012. As such, I believe the trial court exercised manifestly unreasonable judgment when it declined Appellant's request for such protection.[3] *See Middletown, supra.*

Based upon my review of the record and the applicable law, I believe the trial court abused its discretion when it denied Appellant's request for a protective order. Accordingly, I would reverse the trial court's April 11, 2012 order. Therefore, I respectfully dissent.

---

**3.** Based upon this resolution, I express no opinion as to Appellant's first issue.