J-A34007-15

2016 PA Super 61

| DIANA SHEARER AND JEFF SHEARER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| SCOTT HAFER AND PAULETTE FORD | |
| Appellees | No. 665 MDA 2015 |

Appeal from the Order March 17, 2015
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2012-01286

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

OPINION BY PANELLA, J.                                     **FILED MARCH 09, 2016**

Appellants, Diana Shearer and Jeff Shearer, appeal from the order entered on March 17, 2015, in the Court of Common Pleas of Lebanon County, granting Appellees, Scott Hafer's and Paulette Ford's motion for a protective order. On appeal, Appellants argue that a litigant has an absolute right to the presence of counsel during an independent neuropsychological evaluation pursuant to Pennsylvania Rule of Civil Procedure 4010. Appellees counter that the presence of third party observers jeopardizes the validity and reliability of the examination and that Pennsylvania Rule of Civil Procedure 4012 provides the court with the discretion to issue "any [protective] order which justice requires." For the following reasons, we find that the trial court was well within its discretion in entering a protective

order prohibiting the presence of third party observers during the standardized test portion of the neuropsychological evaluation.

We take the underlying facts in this matter from the trial court's March 17, 2015 opinion.

> This case stems from a motor vehicle accident that occurred on July 15, 2010. On that date, Scott Hafer was operating a vehicle owned by his mother, Paulette Ford. According to the Complaint filed by [the Appellants,] Mr. Hafer pulled his vehicle into the path of a vehicle operated by Dana Shearer, thereby causing an accident. As a result of this accident, the [Appellants] seek monetary compensation for injur[ies] they suffered.
>
> One of [the Appellants'] claims involves alleged cognitive harm that was triggered by the accident. According to documentation presented [to the trial court,] M[r]s. Shearer was evaluated by Dr. Paul Eslinger, a neuropsychologist with the Hershey Medical Center. The neuropsychological examination conducted by Dr. Eslinger employed standardized testing procedures and was conducted without the presence of [Appellants'] counsel and any other third party. Dr. Eslinger has been listed by [Appellants] as a trial witness.
>
> Because of the above, the [Appellees] hired Dr. Victor Malatesta to conduct an independent neuropsychological examination. Notice of Dr. Malatesta's [proposed examination] was provided to [Appellants'] counsel. [Appellants'] counsel did not conceptually oppose the [Appellees'] request for an independent neuropsychological examination. However, [Appellants'] counsel demanded to be present during all components of Dr. Malatesta's neuropsychological examination.
>
> When the precondition established by [Appellants'] counsel was communicated to Dr. Malatesta, the doctor objected. Via a letter dated May 6, 2014, Dr. Malatesta advised a representative of the Appellees:
>
>> [T]he attorney's request to audiotape the testing evaluation poses significant challenges. I am bound by the ethical principles of psychologists and code of conduct by the American Psychological Association (APA) and the

National Academy of Neuropsychology (NAN) to both protect the integrity of the examination and the security of the test materials. In this regard, the attached official statement of the National Academy of Neuropsychology is fairly clear regarding the presence of a third party observer (including audiotaping) during the administration of formal test[ing] procedures. Audiotaping during testing may represent a threat to the validity and reliability of the test data, and may compromise the valid use of normative standards. Thus, besides introducing a bias and potential distortion of the data, it is also inconsistent with the requirements for standardized test administration as set forth in the APA's ethical principles.

Dr. Malatesta ended his letter by indicating that he would permit [Appellants'] attorney to be present during the interview portion of his examination. However, Dr. Malatesta would not permit either the presence of [Appellants'] counsel or audiotaping during the standardized test phase of his evaluation.

Dr. Malatesta's proposed compromise was not acceptable to [Appellants'] counsel. [Appellants'] counsel reiterated his demand to be present at all phases of the independent neuropsychological examination. This would include the phase that involved standardized neurological testing. Unfortunately, the positions of [Appellants'] counsel and Dr. Malatesta created an impasse that required intervention by the [trial court].

[The trial court] met both counsel at a status conference on February 10, 2015. As a result of that status conference, [the court] solicited legal briefs from both parties. [The court] also asked the [Appellees'] attorney to procure additional information from Dr. Malatesta. That information was communicated by way of a letter dated February 18, 2015. In that letter, Dr. Malatesta outlined with more specificity the phase of his testing for which he required privacy. In addition, he expanded upon the ethical constraints that govern his neuropsychological testing.

The ethical rules governing exams by neuropsychological experts upon which I am relying on preclude a third party from being present during parts of the testing are drawn from at least two sources.

First, the Official Statement of the National Academy of Neuropsychology (NAN) regarding Presence of Third Party Observers During Neuropsychological Testing, which was

also published in the <u>Archives of Clinical Neuropsychology</u> (2000, 15, 379-380), indicates that the presence of a third party in the testing room represents a potential distraction, and that standardized test manuals … "have specifically stated that third party observers should be excluded from the examination room to keep free from distraction." (NAN, 2000, p. 379). It also states that "the presence of a third party observer in the testing room is also inconsistent with the requirements for standardized test administration as set forth in the APA's Ethical Principles of Psychologists and Code of Conduct" (NAN, 2000, p. 379), because it creates the potential for distraction and/or interruption. The specific rule of the APA's Ethical Principles and Code is stated under use of Assessments 9.02 (APA, 2002).

Second, the Official Statement of the National Academy of Neuropsychology (NAN) regarding Test Security: An Update which was approved by the NAN Board of Directors on 10/13/03, and was first published in the <u>Archives of Clinical Neuropsychology</u> (2000, 15, 383-386) also indicates that:

> A major practice activity of neuropsychologists is the evaluation of behavior with neuropsychological test procedures. Many tests, for example, those of memory or ability to solve novel problems, depend to varying degrees on a lack of familiarity with the test items. Hence, there is a need to maintain test security to protect the uniqueness of these instruments. This is recognized in the 1992 and 2002 Ethical Principles of Psychologists and Code of Conduct (APA, 1992; Code 2.1, and APA, 2002; Code 9.11, Maintaining Test Security) … In the course of the practice of psychological and neuropsychological assessment, neuropsychologists may receive requests from attorneys for copies of test protocols, and/or requests to audio or videotape testing sessions. Copying test protocols, video and/or audio taping a psychological or neuropsychological evaluation for release to a non-psychologist potentially violates the Ethical Principles of Psychologists and Code of Conduct (APA, 1992; APA, 2002), by placing confidential test procedures in the public domain 2.10, and by making tests available to

persons unqualified to interpret them (APA, 1992; Codes 2.02, 2.06 and 2[.]10; APA, 2002; Codes 9.04 and 9.11).

Trial Court Opinion, 3/17/15 at 2-5.

After reviewing the briefs of the parties, along with the information provided by Dr. Malatesta, the trial court entered an order granting Appellees' request for a protective order. The order stipulated that although Appellants' counsel "may be present during the preliminary interview phase of the neuropsychological examination," "no individual shall be permitted in the evaluation room with Diana Shearer and Dr. Malatesta" during the phase of the evaluation that involves standardized testing. Order, 3/17/15. The order further provided that "no recording device shall be permitted in the evaluation room." *Id*. Finally, the trial court required that the results of the examination be provided to plaintiff's counsel.

Appellants filed a timely notice of appeal of the court's March 17 order, in addition to a motion for reconsideration of that order. The trial court later denied their motion for reconsideration. Appellants additionally filed an application to amend the protective order to include certification of the matter as an interlocutory appeal with permission pursuant to Pa.R.A.P. 1311(b), which the trial court also denied.

By order of May 12, 2015, this Court directed Appellants to show cause as to why this appeal should not be quashed as interlocutory. Appellants filed a response. This Court then discharged the May 12 show cause order and referred the issue of appealability to the merits panel.

Prior to reaching the merits of Appellants' argument, we must determine whether we have jurisdiction to entertain Appellants' appeal. An appeal lies only from a final order unless otherwise permitted by rule or statute. *See* Pa.R.A.P. 341(b).

> Generally, discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation. A non-final order may be reviewed if it is separable from and collateral to the main cause of action, the right involved [is] too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). All three factors set forth in Rule 313 must be satisfied. The Pennsylvania Supreme Court has stated that Rule 313 must be construed narrowly: Claims must be analyzed not with respect to the specific facts of the case, but in the context of the broad public policy interests that they implicate. Only those claims that involve interests deeply rooted in public policy can be considered too important to be denied review.

*Leber v. Stretton*, 928 A.2d 262, 265 (Pa. Super. 2007) (some citations and all internal quotation marks omitted).

Here, we find that the order granting Appellees' request for a protective order to prohibit the presence of third parties during Mrs. Shearer's neuropsychological examination is clearly separable from and collateral to the main cause of action, which is a personal injury action. Second, we find that any matter implicating and potentially infringing upon a litigant's right to counsel is undeniably too important to be denied review. Thirdly, we are convinced that the question presented is such that if review is postponed until final judgment, the claim made concerning the Appellant's right to have counsel present during a neuropsychological examination

would be irreparably lost. ***See***, ***e.g.***, ***Commonwealth v. Shearer***, 882 A.2d 462, 469 (Pa. 2005) (finding postponement in reviewing order compelling minor complainant to submit to a psychological exam would render underlying claim irreparably lost, given that there is no way to "turn back the clock" should it later be determined that the complainant should be free from such an examination). Accordingly, we find that Appellants have properly appealed from a collateral order pursuant to Pa.R.A.P. 313, and we proceed to address the merits of Appellants' claim on appeal.

Appellants frame the issue raised on appeal as follows.

> Whether the trial court erred in granting [Appellees'] motion for a protective order where Mrs. Shearer has the right to have her counsel present and to audio record all portions of the neuropsychological examination pursuant to the clear language of Pa.R.C.P. 4010, and in the alternative, [Appellees] have not shown good cause to justify the trial court stripping Mrs. Shearer of her statutorily protected rights.

Appellant's Brief at 4.

This Court has previously recognized that the issuance of a protective order lies within the discretion of the trial court.

> There are no hard-and-fast rules as to how a motion for a protective order is to be determined by the court. Whether to grant or deny the motion, and what kind or kinds of protective orders to issue are matters that lie within the sound judicial discretion of the court, and the court's determination as to these matters will not be disturbed unless that discretion has been abused.

***Hutchinson v. Luddy***, 606 A.2d 905, 908 (Pa. Super. 1992) (citation omitted). To the extent that Appellants' question necessitates our analysis

and interpretation of the Pennsylvania Rules of Civil Procedure, our standard of review is *de novo*. **See Sigall v. Serrano**, 17 A.3d 946, 949 (Pa. Super. 2011).

Pennsylvania Rule of Civil Procedure 4010, entitled Physical and Mental Examination of Persons, provides in relevant part as follows.

> The person to be examined shall have the right to have counsel or other representative present during the examination. The examiner's oral interrogation of the person to be examined shall be limited to matters specifically relevant to the scope of the examination.

Pa.R.C.P. 4010(a)(4)(i). Subdivision (a)(5)(i) further provides that "[t]he party who is being examined or who is producing for examination a person in the party's custody or legal control may have made upon reasonable notice and at the party's expense a stenographic or audio recording of the examination."

Initially, we note that there is no Pennsylvania Appellate Court decision that directly addresses a litigant's right to counsel during a psychological examination.[1] Appellants rely, in part, upon the plain language of Pa.R.C.P. 4010 to support their position that the right to have counsel present during

---

[1] In **State Farm Mutual Automobile Insurance Co. v. Morris**, 432 A.2d 1089, 1092 (Pa. Super. 1981), a panel of this Court posited, in dictum, that the decision to allow the presence of counsel during a psychological examination was within the discretion of the trial court. **Morris**, however, predates the 1998 amendment of Pa.R.C.P. 4010 to include the right to have counsel present during the examination. Accordingly, it has no bearing upon our analysis in this case.

the examination is absolute. They assert that the legislature's designation of the imperative "shall" indicates a clear intent that the right to counsel during a psychological or medical examination is mandatory.

While superficially appealing, there is an important caveat to Appellants' bright-line interpretation. When interpreting the legislature's use of the word "shall" in a different context, this Court has previously stressed that

> [e]xcept when relating to the time of doing something, statutory provisions containing the word "shall" are usually considered to be mandatory, but it is the intention of the legislature which governs, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other.

*Linde v. Linde Enterprises, Inc*., 118 A.3d 422, 435 (Pa. Super. 2015), *appeal denied*, ___ A.3d ___, 2015 WL 9646645 (Pa. 2015) (citing *Fishkin v. Hi-Acres, Inc.*, 341 A.2d 95, 97 (Pa. 1975)). *See also Tyler v. King*, 496 A.2d 16, 19 (Pa. Super. 1985) ("[I]t has long been the rule in Pennsylvania that the word 'shall,' although usually mandatory or imperative when used in a statute, may nonetheless be directory or permissive, depending upon the Legislature's intent.").

With this caveat in mind, we look to Pennsylvania Rule of Civil Procedure 4012 to further ascertain legislative intent. Rule 4012, governing the trial court's ability to issue protective orders, states that "[u]pon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice

requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense…." Subsection (a)(6) of that Rule specifically contemplates a court's discretion to impose an order directing that "discovery or deposition shall be conducted with no one present except persons designated by the court."

Although no case law addresses the application of Rule 4012 to Rule 4010, the explanatory comment to the 1978 amendment to the Rule stresses that "[t]he amendment provides a comprehensive Rule which covers all depositions and *all discovery*." (emphasis added). As Rule 4010 and Rule 4012 both appear in the same subchapter of the Pennsylvania Rules of Civil Procedure governing Depositions and Discovery, it appears that the legislature intended Rule 4012 to empower the trial court with the discretion to issue protective orders in various discovery procedures, including, specifically, the power to limit the number of individuals present. Absent any indication that the legislature sought to curb the court's power under Rule 4012 to limit the protections provided under Rule 4010, we conclude that the trial court's power to issue protective orders expressly encompasses the ability to limit the number of individuals present during *all discovery*, including during psychological examinations.

Our inquiry does not end here. Rule 4012 does not empower the trial court to issue protective orders *carte blanche*. The Rule places on the moving party the burden of showing "good cause." Although there has been scant analysis as to what constitutes "good cause" under Rule 4012, we find

guidance in this Court's recent *en banc* decision in **Dougherty v. Heller**, 97 A.3d 1257 (Pa. Super. 2014), **appeal granted in part**, 109 A.3d 675 (Pa. 2015).

In **Dougherty**, the *en banc* panel affirmed the lower court's order granting a journalist's motion to compel the deposition of a public figure and denying protective relief. In that context, the panel expounded that the "good cause" standard "strikes an appropriate balance between competing interests, including a litigant's privacy interests (however they may be defined) … and the court's obligations to administer justice efficiently and prevent abuse of the discovery process." **Id**. at 1266.

Here, in finding that Appellees had established good cause to issue a protective order, the trial court echoed the concerns raised by Dr. Malatesta. The court found it significant that the official statements from the National Academy of Neuropsychology and the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct both state that third party observers should be excluded from the standardized test portion of the examination to keep it free from distraction. **See** Trial Court Opinion, 3/17/15 at 11-13. The court also found important the apparent potential of third party observers to preclude valid interpretation of test results and afforded great weight to the official position of the National Academy of Neuropsychology "that neuropsychologists should strive to minimize all influences that may compromise accuracy of assessment and should make every effort to exclude observers from the evaluation." **Id**. at 12-13. The

court took seriously the fear that forcing Dr. Malatesta to conduct the neuropsychological examination in the presence of counsel would place the doctor at odds with his ethical duties, which the court was loathe to do. **See id**. at 13. Finally, the court noted the National Academy of Neuropsychology's position that audio recording jeopardizes the validity of test performance. **See id**.

In addition to the serious professional and ethical concerns highlighted by Dr. Malatesta, the court feared that permitting a third party observer into the neuropsychological examination room would afford Appellants' counsel with an "irrefutable impeachment tool." **Id**. The court reasoned that given the potential that tests conducted with a third party observer would not yield a valid result, the doctor's own written statements could potentially be used for impeachment purposes if the court were to force Dr. Malatesta to conduct his examination in the presence of a third party. **See id**.

We find that the trial court's analysis represents a fair and thoughtful balance of both the patient's interest in the presence of counsel during the neuropsychological examination and the court's obligation to administer justice efficiently and prevent abuse of the discovery process. The concerns presented by Dr. Malatesta and highlighted by the trial court are not abstract or unsubstantiated. We find that this evidence supports Appellees' claim that protection was, in this case, appropriate to safeguard the integrity and reliability of the neuropsychological examination. Although Appellees counter that they were not afforded the opportunity to present evidence to refute the

information offered by Dr. Malatesta, they offer nothing of comparable substance in rebuttal.

We are satisfied that Appellees have shown good cause that a protective order was necessary to prohibit the presence of outside observers during Dr. Malatesta's neuropsychological examination. The trial court's decision to permit Mrs. Shearer's attorney to be present during the preliminary interview phase, but not during the standardized testing portion of the examination, strikes a fair balance between Mrs. Shearer's interest in having her counsel present and preserving the integrity and validity of the neuropsychological examination. Accordingly, we discern no abuse of the trial court's discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016